2023-1823

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

JILLIAN LESKO,
Plaintiff-Appellant,

v.

UNITED STATES,
Defendant-Appellee.

Appeal from the United States Court of Federal Claims
No. 22-CV-715-CNL, Hon. Carolyn N. Lerner

BRIEF OF DEFENDANT-APPELLEE

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL
PETER COOPER
Assistant Regional Counsel
Office of The General Counsel
Department Of Health and
Human Services

KELLY GEDDES
Trial Attorney
Commercial Litigation Branch
General Litigation Division
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-2867

Dated: October 10, 2023

*Attorneys for Defendant-Appellee*

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ....................................................................1

STATEMENT OF THE ISSUES........................................................................1

STATEMENT OF THE CASE AND COURSE OF PROCEEDINGS BELOW.....2

    I.    Nature Of The Case .................................................................................2

    II.    Factual Background .................................................................................2

          A.    Allegations In The Amended Complaint ....................................2

          B.    Legal Framework For Title 38 Benefits .....................................4

    III.    Course Of Proceedings Below.................................................................6

SUMMARY OF THE ARGUMENT ....................................................................8

ARGUMENT ...................................................................................................10

    I.    Ms. Lesko Is Not Entitled To Title 38 Premium Pay...........................10

    II.    Title 5 Employees Cannot Recover Under An Induced Overtime Theory...................................................................................................13

    III.    Ms. Lesko Fails To Allege That IHS Knew The "Specific Days And Hours" Of Her Nighttime, Sunday, And Holiday Work In Advance ..16

    IV.    The Trial Court Did Not Err In Declining To Explicitly Address An Informal Request To Amend Buried In Ms. Lesko's Brief.................20

CONCLUSION .................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Anderson v. United States*, 136 Ct. Cl. 365 (1956)....................................................14

*Aviles v. United States*, 151 Ct. Cl. 1 (1960) ............................................... 17, 18, 19

*Buchan v. United States*, 31 Fed. Cl. 496 (1994)............................................. 17, 18

*Burich v. United States*, 177 Ct. Cl. 139 (1966) ............................................. 8, 19

*Carlson v. Hyundai Motor Co.*, 164 F.3d 1160 (8th Cir. 1999) ............................21

*Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984)........................................ 1, 15

*Chu v. United States*, 773 F.2d 1226 (Fed. Cir. 1985) ............................................22

*Doe v. United States*, 372 F.3d 1347 (Fed. Cir. 2004), *cert. denied*, 544 U.S. 904 (2005)................................................................................................................14

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ...........................................................23

*Forestry Survs. & Data v. United States*, 44 Fed. Cl. 485 (1999)...........................23

*Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368 (10th Cir. 1989)........20

*Horvath v. United States*, 896 F.3d 1317 (Fed. Cir. 2018).....................................13

*Medrano v. United States*, 161 Fed. Cl. 207 (2022) ......................................... 17, 18

*Mercier v. United States*, 786 F.3d 971 (Fed. Cir. 2015) ................................... 4, 14

*Refaei v. United States*, 725 F. App'x 945 (Fed. Cir. 2018)...................... 20, 21, 22

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004)...........................................................................................................20

*Wilner v. Dimon*, 849 F.3d 93 (4th Cir. 2017).......................................................20

## <u>Statutes</u>

38 U.S.C. § 7453...........................................................................................................6

38 U.S.C. § 7455...........................................................................................................6

42 U.S.C. § 282...........................................................................................................12

5 U.S.C. § 1104.............................................................................................................5

5 U.S.C. § 5371 ........................................................................................... 5, 6, 10, 13

5 U.S.C. § 5541 *et seq.*................................................................................................6

**Regulations**

5 C.F.R. § 111 ......................................................................................................7

5 C.F.R. § 550.103 ..............................................................................................16

5 C.F.R. § 550.111 ..............................................................................................14

5 C.F.R. § 550.121 ......................................................................................... 7, 16

5 C.F.R. § 550.131 ..............................................................................................16

5 C.F.R. § 550.171 ..............................................................................................16

5 C.F.R. § 610.121 ......................................................................................... 8, 18

**Other Authorities**

Indian Health Service, Office of Human Resources, Pay and Benefits, Pay, Additional Compensation (Oct. 17, 2022), available at https://www.ihs.gov/ohr/pay-and-benefits/pay/additional-compensation/. ...........6

Indian Health Service, Pay Systems and Tables, Pay Systems Authorized Under Title 38 of the United States Code, Title 38 Special Salary Rates (Oct. 17, 2022), available at https://www.ihs.gov/OHR/pay-and-benefits/pay/pay-systems-pay-tables/ ....................................................................................................................6

U.S. Office of Personnel Management, Delegation Agreement between U.S. Office of Personnel Management and Department of Health and Human Services (June 28, 2022), https://hr.nih.gov/sites/default/files/public/documents/ benefits/pay/title-38-pay/pdf/title38delegationagreement.pdf .................... 5, 6, 10

## STATEMENT OF RELATED CASES

No appeal from this civil action was previously before this or any other appellate court.  Counsel is unaware of any case pending before this or any other court or agency that will directly affect or be affected by this Court's decision in the pending appeal.

Ms. Lesko asserts that this case may be directly affected if the Supreme Court alters or limits *Chevron* deference in its anticipated decision in *Loper Bright Enters. v. Raimondo*, Case No. 22-451.  However, until the Supreme Court issues any such decision, this is speculation and has no relevance to this case, which must be decided in accordance with the law as it currently stands.

## STATEMENT OF THE ISSUES

1.      Whether the trial court correctly concluded that Ms. Lesko, a Title 5 employee, was not entitled to bring a claim for Title 38 premium pay.

2.      Whether the trial court correctly determined that Ms. Lesko is not entitled to Title 5 overtime pay unless the alleged overtime was approved in writing.

3.      Whether the trial court correctly found that Ms. Lesko failed to allege nighttime, Sunday, and holiday work that could have been scheduled in advance, and therefore was not entitled to Title 5 premium pay for that work.

4.      Whether the Court erred in failing to explicitly address Ms. Lesko's request to amend her complaint, which was not made by motion but rather was embedded in her response to the Government's motion to dismiss.

5.      If the Court did err in failing to address Ms. Lesko's request to amend, whether that error was harmless because Ms. Lesko admits that her supervisors did not know the specific days and hours of the alleged nighttime, holiday, and Sunday work in advance.

## STATEMENT OF THE CASE AND COURSE OF PROCEEDINGS BELOW

### I.      Nature Of The Case

Ms. Lesko appeals the judgment of the Court of Federal Claims in *Lesko v. United States*, 164 Fed. Cl. 663 (Mar. 21, 2023), dismissing, without prejudice, Ms. Lesko's complaint because it  fails to state a claim upon which relief may be granted.  *See* Appx001-010 (Opinion and Order); Appx011 (Judgment).

### II.      Factual Background

#### A.      Allegations In The Amended Complaint

Ms. Lesko served as an advanced practice registered nurse (APRN) at Indian Health Service (IHS) facilities in Phoenix, Arizona, and Wadsworth, Nevada, from November 9, 2020, through July 2, 2021.  Appx074.  Ms. Lesko was hired as, and served as, a GS-13, Step 10 employee.  Appx218.  Ms. Lesko resigned her position with IHS effective July 2, 2021.  Appx221.

According to the complaint, while Ms. Lesko worked for IHS, its facilities were stretched thin due to the Covid-19 pandemic. Appx082. She claims that nurses were required to work beyond their regularly scheduled hours "at least weekly and often daily throughout nearly all of 2020 and most of 2021." *Id.* She also alleges that this included work on Sundays, on holidays, and at night. Appx087-088.

Some overtime, Sunday, holiday, and nighttime work was compensated, either with premium pay or with compensatory time off. *See* Appx078-79 (alleging that IHS incorrectly calculated premium rates *when it gave* nurses Title 5 premium pay for nighttime, holiday, Sunday, and overtime work); Appx088 (alleging that IHS sometimes required nurses to accept compensatory time off in lieu of overtime).

In addition, the complaint alleges that heavy workloads, and a need to timely respond to certain notifications, led nurses to perform uncompensated "off-the-clock" overtime work that was not part of their official schedules. Appx082-89. For instance, the complaint alleges that IHS uses electronic systems that issue alerts and messages to nurses at all hours, some of which require immediate responses. Appx083-84. Similarly, it alleges that nurses "are often required to submit and/or respond to certain patient notes and records within a 48-72 hour time period." Appx084. With respect to this "off-the-clock" work, the complaint

3

asserts that "managerial pressures [led] nurse practitioners [] to work off-the-clock overtime through expectation, requirement, and/or inducement."  Appx084-85 (citing *Mercier v. United States*, 786 F.3d 971, 980-982 (Fed. Cir. 2015)).

Further, the complaint asserts that "the tasks alleged herein"—presumably referring to the unpaid "off-the-clock" work that nurses performed when resource constraints required them to stay late or complete additional tasks on their own time, *see* Appx086-87, as well as the work performed responding to alerts and messages received outside regular work hours, *see* Appx083-84—were sometimes completed at night, on Sundays, or on holidays.  Appx087-88.  Accordingly, Ms. Lesko claims that the nurses are entitled to premium pay for the hours spent performing those tasks.  Appx087.

Finally, the complaint alleges that nurses were "routinely and regularly informed by supervisors that overtime pay was not approved and/or allowed in many circumstances" and were "routinely required to take compensatory time in lieu of overtime pay without their consent."  Appx088.

## B.     <u>Legal Framework For Title 38 Benefits</u>

IHS hired Ms. Lesko pursuant to Title 5 of the United States Code, as Ms. Lesko acknowledges.  Pl. Br. at 4; *see also* Appx218.  Title 38, which governs employees of the Department of Veterans Affairs (VA), therefore does not govern Ms. Lesko's employment.

However, the Office of Personnel Management (OPM) has authority to apply certain provisions of Title 38 to certain Title 5 health care workers outside of the VA, including IHS nurses such as Ms. Lesko. *See* 5 U.S.C. § 1104. These include Title 38 provisions concerning the classification of positions (chapter 51), pay rates and systems (chapter 53), hours of work (chapter 61), and premium pay (subchapter V of chapter 55). *See* 5 U.S.C. § 5371(b). OPM has the authority to pick and choose which of these provisions to extend to eligible Title 5 employees, in which case the Title 38 provision will displace the analogous Title 5 provision. 5 U.S.C. § 5371.

OPM has formally delegated this authority to the United States Department of Health and Human Services (HHS).[1] The Secretary of HHS, in turn, delegated its administrative and human resources authorities to the Assistant Secretary for Administration. Appx170. The Assistant Secretary for Administration then delegated to the HHS Operating Divisions—including IHS—"all human resources line management authority for [their] components." Appx168. In this manner, IHS was delegated the authority described above to apply, according to its

---

[1] *See* U.S. Office of Personnel Management, Delegation Agreement between U.S. Office of Personnel Management and Department of Health and Human Services (June 28, 2022), https://hr.nih.gov/sites/default/files/public/documents/benefits/pay/title-38-pay/pdf/title38delegationagreement.pdf (hereinafter "delegation agreement").

discretion, "1 or more" provisions of Title 38 to eligible Title 5 health care workers as permitted by 5 U.S.C. § 5371.

Pursuant to the delegation agreement between OPM and HHS, and the delegations from HHS to its Operating Divisions, IHS uses authority found in 38 U.S.C. § 7455 to set special salary rates for its nurses.[2]  However, IHS chose not to apply the premium pay provisions of Title 38, found in section 7453.  Accordingly, to the extent that IHS employees qualify for premium pay, that pay continues to be governed by Title 5.  *See* 5 U.S.C. § 5541 *et seq.*[3]

## III.  <u>Course Of Proceedings Below</u>

Ms. Lesko initiated this suit by filing a complaint in the Court of Federal Claims on June 27, 2022.  Appx015-29.  The complaint contained one count seeking compensation for overtime, nighttime, weekend, and holiday pay pursuant to Title 38.  Appx026-28.  The Government requested dismissal because Title 5

---

[2]  "IHS has authorized higher rates of basic pay than regular GS locality rates for certain health care occupations based on documented recruitment and retention issues and in compliance with Title 38 statutory criteria."  Indian Health Service, Pay Systems and Tables, Pay Systems Authorized Under Title 38 of the United States Code, Title 38 Special Salary Rates (Oct. 17, 2022), available at https://www.ihs.gov/OHR/pay-and-benefits/pay/pay-systems-pay-tables/.

[3]  IHS clearly identifies the bases for its employees to receive premium pay on its website.  It provides information on "Additional Compensation," including premium pay, available under only Title 5, U.S. Code, not Title 38.  Indian Health Service, Office of Human Resources, Pay and Benefits, Pay, Additional Compensation (Oct. 17, 2022), available at https://www.ihs.gov/ohr/pay-and-benefits/pay/additional-compensation/.

employees such as Ms. Lesko are not entitled to the premium pay benefits provided by Title 38.

Ms. Lesko then filed an amended complaint that continued to include a Title 38 claim but also included claims for overtime, nighttime, Sunday, and holiday premium pay pursuant to Title 5.  Appx091-99.  The Government once again requested dismissal because Ms. Lesko was not a Title 38 employee and was not entitled to the premium pay provisions of Title 38.  Further, she failed to state a claim for Title 5 premium pay because she failed to allege that any of the alleged uncompensated overtime, nighttime, Sunday, or holiday work was either (1) approved in writing or (2) scheduled in advance as part of Ms. Lesko's regularly scheduled tour of duty, as required by the applicable regulations.  *See* 5 C.F.R. § 111 (overtime must be approved in writing), § 103 (defining "nightwork," "Sunday work," and "holiday work" as work performed during regularly scheduled workweek).

The trial court granted the Government's motion to dismiss.  The court reasoned that, as "a Title 5 employee benefiting from certain Title 38 provisions," Ms. Lesko could not bring a claim based on the premium pay provisions of Title 38, which IHS did not choose to extend to her.  Appx004-5.  The trial court further reasoned that Ms. Lesko did not allege that she completed nightwork, Sunday work, or holiday work within the definitions provided by 5 C.F.R. § 550.121,

because she acknowledged that the alleged work was unscheduled. Appx008. The trial court acknowledged that in the past, the Court of Claims applied principles of equity to treat unscheduled work as scheduled if it was "recurrent, daily, but unscheduled" work that "'could have and indeed should have been formally scheduled.'" *Id.* (quoting *Burich v. United States*, 177 Ct. Cl. 139, 147 (1966). But in this case, "much of Ms. Lesko's off-the-clock work was impossible to schedule in advance," and "[n]othing in the Amended Complaint suggests her additional work could be formally scheduled." Appx008. Moreover, OPM has codified this equitable principle in 5 C.F.R. § 610.121(b)(3), which requires the agency to have "knowledge of the specific days and hours of the work requirement in advance." Appx008-9. The Court concluded that in this case "the alleged facts belie 'knowledge of the specific days and hours,'" and Ms. Lesko therefore failed to state a claim for premium pay pursuant to Title 5. Appx009.

Accordingly, the trial court dismissed all counts of the amended complaint. This appeal followed.

## **SUMMARY OF THE ARGUMENT**

The trial court correctly found that Ms. Lesko failed to state a claim for which relief could be granted. The fist count of her amended complaint, seeking premium pay pursuant to Title 38, fails because those provisions of Title 38 have not been extended to Ms. Lesko. The discretion to choose which provisions of

Title 38 to apply to Ms. Lesko was properly delegated to IHS, and IHS chose not to apply the premium pay provisions. And if that discretion had not been properly delegated, as Ms. Lesko claims, this would not entitle her to Title 38 premium pay—rather, it would indicate that she should not have received any Title 38 benefits at all.

The second count of the amended complaint fails to state a claim because it is premised on a theory of induced overtime that this Court has already rejected for Title 5 employees. The remaining counts, which claim entitlement to night, holiday, and Sunday premium pay under Title 5, fail because the governing regulations require that night, holiday, and Sunday work be scheduled in advance, or known in advance with sufficient specificity that it should have been scheduled in advance. Ms. Lesko's allegations do not satisfy this requirement.

Lastly, the trial court did not abuse its discretion when it declined to address a request that Ms. Lesko made, as part of her brief in opposition to the Government's motion to dismiss, to amend her complaint a second time. Even if the trial court should have considered Ms. Lesko's request to amend the complaint again, the court's failure to consider that request would constitute harmless error because amendment would have been futile.

## ARGUMENT

### I.    Ms. Lesko Is Not Entitled To Title 38 Premium Pay

The trial court properly determined that Ms. Lesko was not a Title 38 employee, that IHS's choice to pay her at Title 38 rates did not entitle her to all benefits of Title 38, and that she therefore could not bring a claim for Title 38 premium pay. This reasoning is correct and should be affirmed.

Ms. Lesko now acknowledges that she was not hired as a Title 38 employee, and she does not dispute that OPM has authority to apply "1 or more provisions" of Title 38 to Title 5 employees, without necessarily applying all those provisions. Pl. Br. at 19 (quoting 5 U.S.C. § 5371). Ms. Lesko also does not dispute that OPM delegated the authority to HHS to choose which provisions of Title 38 to apply. *Id.* at 20-21. The only dispute is whether HHS properly delegated this authority to IHS. IHS is the HHS Operating Division that employed Ms. Lesko. IHS elected to pay her a salary based on an increased Title 38 rate but did not elect to pay her Title 38 premium pay for nighttime, Sunday, and holiday work.

The chain of delegations from OPM to IHS is proper. First, OPM delegated its authority to the HHS secretary. Appx004 (citing Exhibit A to the amended complaint, Appx101-144). The delegation agreement explains that OPM delegated to HHS "discretionary use of certain title 38 provisions" and that "[i]f HHS uses one of the authorities…the comparable authority in title 5 is waived." Appx102.

Ms. Lesko does not dispute that this means HHS has the authority to apply some, but not all, of these Title 38 benefits to IHS employees.  *See* Pl. Br. at 20-21.

Then, the Secretary of HHS delegated its "administrative and human resources authorit[y]" to the Assistant Secretary for Administration, who in turn delegated "[a]ll human resources line management authority" to IHS.  Appx170, App168.  As the trial court observed, "Nothing in the memoranda tracing discretion from OPM to, ultimately, IHS cabined or changed the statutory permission to choose 'one or more' provisions from Title 38 to apply to Title 5 employees."  Appx004.

Ms. Lesko argues that the "administrative responsibilities for human resources" delegated to the HHS Secretary *did* include authority over pay issues such as whether to apply Title 38 benefits, but the "human resource line management authority" delegated to IHS did *not* include authority over pay decisions.  Pl. Br. at 21-22.  Her only support for this argument is the fact that the delegation to IHS included a list of examples unrelated to pay, but the delegation itself explains that "[l]ine management authorities include, *but are not limited to*" those examples.  Appx168 (emphasis added).  Her reliance on a list of examples that is explicitly non-exhaustive is insufficient to establish that HHS was reserving authority over pay issues.

Ms. Lesko also argues that because the National Institute of Health, another HHS Operating Division, applies all available Title 38 provisions to its nurses, IHS must be required to do the same.  Pl. Br. at 22-23.  But NIH's choice to apply more Title 38 provisions to its nurses than IHS is consistent with the fact that each operating division has the discretion to apply as few or as many of the available provisions as it deems appropriate.  It does not support Ms. Lesko's argument that operating divisions were delegated an exclusively all-or-nothing authority with respect to those provisions.  Further, the director of NIH has a separate statutory authority (not applicable to IHS) to appoint certain health care professionals pursuant to Title 5 and compensate them in accordance with Title 38.  *See* 42 U.S.C. § 282(b)(22).  Thus, looking to NIH to understand the scope of IHS's authority is uninformative.

Even if Ms. Lesko were able to show that IHS lacked a delegation related to Title 38 pay authorities, her argument would be self-defeating.  Ms. Lesko never explains how, in her view, IHS possessed the authority to apply Title 38 benefits wholesale, but not the authority to apply them selectively.  If HHS did not delegate authority over these pay decisions to IHS, as Ms. Lesko alleges, then IHS would never have had the authority to apply the Title 38 pay provisions at all.  This would mean that Ms. Lesko (and all other IHS nurses) would not be entitled to *any* Title 38 benefits.  Moreover, nothing in her complaints allege that HHS (as

12

distinguished from IHS) exercised its authority to apply any (or all) Title 38 benefits to all IHS nurses. Therefore, there is no viable interpretation of the applicable delegations under which Ms. Lesko can succeed.

Finally, even if Ms. Lesko were correct and IHS was operating outside its proper authority, she would not have a cause of action within the jurisdiction of the Tucker Act. The Tucker Act provides the Court of Federal Claims with jurisdiction over causes of action arising pursuant to money mandating statutes, but not statutes that grant discretionary authority to extend benefits to employees. *See, e.g.*, *Horvath v. United States*, 896 F.3d 1317, 1320 (Fed. Cir. 2018). Ms. Lesko is now admitting that she is not a Title 38 employee, and that she could obtain Title 38 benefits through only the discretionary application of 5 U.S.C. § 5371. That section provides that OPM "may" provide certain Title 38 benefits to Title 5 employees. In other words, it is explicitly discretionary and is not money-mandating.

For these reasons, Ms. Lesko failed to state a claim for Title 38 benefits. The trial court correctly dismissed that claim, and the decision should be affirmed.

## II.     Title 5 Employees Cannot Recover Under An Induced Overtime Theory

The trial court correctly rejected Ms. Lesko's claim for premium pay for induced overtime work. This Court has determined that Title 5 employees cannot recover for induced overtime because OPM's regulations require overtime to be

approved in writing. *Doe v. United States*, 372 F.3d 1347, 1362 (Fed. Cir. 2004), *cert. denied*, 544 U.S. 904 (2005).  Nowhere in Ms. Lesko's Amended Complaint does she allege that she or potential class members received written authorization for overtime pay.  This alone is fatal to her overtime claim.

Attempting to circumvent the regulation requiring written approval for overtime, Ms. Lesko argues that "[a]n inducement theory of overtime is explicitly authorized by the binding precedent of *Mercier v. United States*, 786 F.3d 971 (Fed. Cir. 2015), and *Anderson v. United States*, 136 Ct. Cl. 365 (1956)."  Pl. Br. at 9.  But in both *Mercier* and *Anderson*, the agency had not issued any regulation requiring that overtime work be approved in writing.  Those cases therefore have no relevance to Title 5 employees, who are subject to a regulation that requires overtime to be approved in writing.  5 C.F.R. § 550.111(c) ("Overtime work in excess of any included in a regularly scheduled administrative workweek may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated.").

Ms. Lesko's further arguments are unavailing.  She emphasizes that in *Mercier*, the Federal Circuit concluded that *Anderson*—which accepted an induced overtime theory when there was no regulation requiring overtime to be approved in writing—"remains good law" and is not inconsistent with *Doe*.  Pl. Br. at 12-14.  That is correct, but it does not help Ms. Lesko's case.  *Doe* and *Mercier* are indeed

consistent, and are both good law: Together, they establish that whether a plaintiff can recover for induced overtime depends on whether the agency has imposed a regulatory requirement that overtime be approved in writing. For Title 5 employees, OPM has undisputedly done so.

With respect to Ms. Lesko's speculation that the Supreme Court might overturn *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), any argument based on this possibility is premature and ignores the concept of *stare decisis*. *Chevron* remains good law. The Federal Circuit was correct to apply *Chevron* when it decided *Doe*. And the trial court was correct to apply *Doe* when it dismissed Ms. Lesko's complaint. A hypothetical future change in law does not unwind these decisions.

Indeed, Ms. Lesko does not ask this Court to change its present legal analysis based on her speculation about the future of *Chevron* deference. *See* Pl. Br. at 14 n. 6 (arguing that *if* the Supreme Court were to overturn or alter *Chevron*, then this case should be "sent down for reconsideration."). Nor could she; it would be entirely unworkable for courts to make decisions based on their guesses as to future changes in the law. Accordingly, at this stage any possible future change to *Chevron* deference is irrelevant.

For these reasons, the trial court correctly concluded that Ms. Lesko's complaint, which failed to allege overtime that was approved in writing, must be dismissed.  Appx006-007.

## III.    Ms. Lesko Fails To Allege That IHS Knew The "Specific Days And Hours" Of Her Nighttime, Sunday, And Holiday Work In Advance

Ms. Lesko argues next that she alleged "recurrent and habitual" nighttime, holiday, and Sunday work that went uncompensated, and that the trial court therefore erred in dismissing her claims for Title 5 premium pay for that work.  Pl. Br. at 14-19.

However, the trial court correctly concluded that Ms. Lesko failed to state a claim on which relief could be granted.  To the extent Ms. Lesko worked Sundays, holidays, or nights as part of her regular schedule, the complaint suggests she did receive premium pay in accordance with Title 5.  *See* Appx078-79.  With the respect to the alleged "off-the-clock" work—the unscheduled work nurses were allegedly pressured to complete on their own time—the relevant question is whether that work was so consistent that the precise hours were known in advance and should have been part of her regular schedule.  Ms. Lesko implicitly admits that this was not the case.  The trial court was therefore correct to dismiss these claims.

Ms. Lesko's claims for nighttime, Sunday, and holiday premium pay are based on 5 C.F.R. §§ 550.121, 550.171, and 550.131, respectively.  These

16

regulations provide for premium pay for "nightwork," "Sunday work," and

"holiday work."  Each of these terms is defined in 5 C.F.R. § 550.103:

- "*Nightwork*" is regularly scheduled work performed by an employee between the hours of 6 p.m. and 6 a.m. and includes "any nightwork performed by an employee as part of his or her *regularly scheduled* administrative workweek;"

- "*Sunday work* means nonovertime work performed by an employee during a *regularly scheduled* daily tour of duty when any part of that daily tour of duty is on a Sunday;"

- "Holiday work means nonovertime work performed by an employee during a *regularly scheduled* daily tour of duty on a holiday…"

(emphasis added).  In short, work cannot qualify as nightwork, Sunday work, or

holiday work unless it is regularly scheduled.

Ms. Lesko does not dispute that the alleged work was not scheduled in

advance, but she argues that it "was recurrent and habitual and therefore should

have been regularly scheduled."  Pl. Br. at 15.  Ms. Lesko relies on a line of cases

finding that if work should have been part of an employee's regular schedule, it is

equitable to treat that work as though it was, in fact, regularly scheduled.  *Id.* at 15-

16 (citing *Aviles v. United States*, 151 Ct. Cl. 1, 7-9 (1960); *Buchan v. United

States*, 31 Fed. Cl. 496, 499-500 (1994); *Medrano v. United States*, 161 Fed. Cl.

207, 209 (2022)).  She argues that she alleged work that was "continuous,

consistent, and regularly performed" and that she therefore meets the requirements for this equitable principle. *Id.* at 16-17.

However, OPM's regulations provide the requirements for any plaintiff who seeks premium pay under this theory:

> it must be determined that the head of the agency:
> (i) Had knowledge of the specific days and hours of the work requirement in advance of the administrative workweek, and (ii) had the opportunity to determine which employee had to be scheduled, or rescheduled, to meet the specific days and hours of that work requirement.

5 C.F.R. § 610.121(b)(3). Ms. Lesko quotes this very provision in support of her claims, Pl. Br. at 6, but then ignores this language and asserts that "the law does not require" "knowledge in advance of the specific days and hours," Pl. Br. at 18. Ms. Lesko attempts to support this view by relying on *Aviles* and *Buchan*. However, *Aviles* was decided before OPM promulgated this regulatory language, and as the Court of Federal Claims explained in *Medrano*—another of the cases Ms. Lesko relies on—this language was OPM's way of codifying the *Aviles* rule. Thus, *Aviles* offers no basis for ignoring the clear regulatory requirements.

Further, *Buchan* barely supports Ms. Lesko's position because in that case the Court explained that if the agency "could have predicted" in advance that "twelve-hour shifts would last a full seven days, it should have scheduled the overtime as part of the agents' regular administrative workweek." *Buchan*, 31 Fed.

Cl. at 499.  In this case, IHS was not aware in advance of the specific days and hours of the alleged "off-the-clock" night, holiday, and Sunday work.  Therefore, under *Buchan*'s framework, the agency could *not* have predicted the hours specifically enough to schedule them as part of Ms. Lesko's regular administrative workweek.

Ms. Lesko implicitly admits that the agency could not have predicted the specific days and hours of her alleged night, Sunday, and holiday work.  Pl. Br. at 18 (arguing that "the law does not require such precision.").  And the nature of the allegations in her amended complaint suggests that it was *ad hoc* work that the agency could not have predicted with such specificity.  *See* Appx083-87.  Rather, she alleges that nurses were required to respond to alerts that "can be sent at any time" and that nurses were required to work "off-the-clock" on occasions when they failed to complete their responsibilities within scheduled hours.  *Id.*  As the trial court observed, Ms. Lesko "does not allege that this work followed an 'actual, controllable' pattern as in *Aviles* and *Burich*."  Appx008.  To the contrary, "much of the Ms. Lesko's alleged off-the-clock work would be impossible to schedule in advance."  *Id.*  Accordingly, the trial court correctly concluded that Ms. Lesko failed to state a claim for entitlement to premium pay for this work.

**IV.    The Trial Court Did Not Err In Declining To Explicitly Address An Informal Request To Amend Buried In Ms. Lesko's Brief**

Finally, Ms. Lesko argues that the trial court erred in failing to grant Ms. Lesko leave to amend her complaint.  Pl. Br. at 23-26.  However, the Court was not required to address her request to amend, and any amendment would have been futile.

Ms. Lesko never filed a motion to amend.  Instead, she made three passing remarks about amending the complaint in her brief in opposition to the Government's motion to dismiss. Specifically, she (1) stated in a footnote that she should be allowed to amend to plead an additional contract claim, Appx237; (2) noted that she "could amend her complaint" to make more specific allegations, Appx241; and (3) wrote in her conclusion that "[t]o the extent the motion is granted as to any count, RCFC 15(a)(2) requires that leave to amend be granted unless the amendment would be futile."  Appx242.

This Court, along with other circuit courts, have repeatedly held that trial courts are not required to address these sorts of buried and undeveloped requests to amend.  *Refaei v. United States*, 725 F. App'x 945, 951 (Fed. Cir. 2018) ("[W]e agree with the Government that the Claims Court did not abuse its discretion by failing to address Dr. Refaei's request, because it was merely incorporated into a response to a motion to dismiss."); *Wilner v. Dimon*, 849 F.3d 93, 114 (4th Cir. 2017) (finding no abuse of discretion when a district court declined to provide a

reason for denying four requests to amend found in the conclusions of oppositions to motions to dismiss and a surreply); *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) (finding that appellant "did not move the court for leave to amend the complaint" when it submitted "[a] naked request for leave to amend asked for as alternative relief."); *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("A bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (internal citation omitted)); *Carlson v. Hyundai Motor Co.*, 164 F.3d 1160, 1162 (8th Cir. 1999) ("A district court does not abuse its discretion in failing to invite an amended complaint when plaintiff has not moved to amend and submitted a proposed amended pleading.").

When the trial court dismissed Ms. Lesko's complaint, without prejudice, and when she neither moved to amend her complaint nor submitted a proposed amended pleading, the trial court did not abuse its discretion by declining to address her request.

In any event, amendment would be futile. Ms. Lesko asserts that she can "more specifically allege" that her work was "recurrent and habitual," Pl. Br. at 24, but this would not add anything to her complaint, which already alleges "continuous, consistent, and regularly performed" work. Appx082-83. Her claim

fails because she does not allege that IHS knew her expected work schedule with sufficient specificity to schedule in advance. She does not "specifically identify any new facts or arguments that would overcome [this] failure," thus "any proposed amended complaint would have been futile." *Refaei*, 725 F. App'x at 951.

Ms. Lesko further asserts that she can amend her complaint to make a common law contract claim to recover her "basic pay for the time spent performing uncompensated IHS work." Pl. Br. at 24. However, this too would be futile. This Court has rejected contract-based wage claims against the United States. It is a well-established principle that, absent specific legislation, "federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Refaei v. United States*, 725 F. App'x at 950 (citing *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985)). For these reasons, the trial court did not commit any error regarding Ms. Lesko's request to amend, and any such error would be harmless in any event because amendment would have been futile.

Finally, Ms. Lesko's baseless assertion that RCFC 15(a)(2) "requires that leave to amend be granted unless the amendment would be futile" is not accurate. Appx242. This rule is discretionary: "a party may amend its pleading only with

the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  RCFC 15(a)(2).  Futility is just one of the reasons why leave to amend should be denied.  "The Supreme Court has explained that a court should deny leave to amend the complaint in circumstances of undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of amendment, or the futility of amendment." *Forestry Survs. & Data v. United States*, 44 Fed. Cl. 485, 489 (1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Courts may also consider "judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation" and can justify denying a request to amend "if a plaintiff fails to correct a pleading when given the opportunity to do so, such as during a prior amendment of a complaint, when information necessary for such an amendment was available." *Id.* at 489-490.  Not only has the Government shown that leave to amend would be futile, but Ms. Lesko has failed to show why, when the necessary information was available to her, she failed to include it in her prior amendment.

In short, the Court of Federal Claims did not abuse its discretion by declining to address Ms. Lesko's contingent request to amend.  Nor, if considered, should the request to amend have been granted.

## **CONCLUSION**

For these reasons, we respectfully request that the Court affirm the trial court's judgment.

<div style="margin-left:40%;">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/ Kelly Geddes
KELLY GEDDES
Trial Attorney
Commercial Litigation Branch
General Litigation Division
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-2867

</div>

OF COUNSEL
PETER COOPER
Assistant Regional Counsel
Office of The General Counsel
Department Of Health and
Human Services

Dated: October 10, 2023                    *Attorneys for Defendant-Appellee*

CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, respondent-appellee's counsel certifies that this brief complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which this brief was prepared, the brief contains a total of 5,233 words.