**23-1823**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

JILLIAN LESKO,
*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA
*Defendant-Appellee*.

---

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS IN 1:22-cv-00715 CNL

JUDGE CAROLYN N. LERNER

---

# CORRECTED *EN BANC* OPENING BRIEF OF APPELLANT

---

Michael S. Morrison, Esq.
Alexander Morrison + Fehr LLP
1900 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
T: (310) 394-0888
F: (310) 394-0811
E: mmorrison@amfllp.com

Dimitrios V. Korovilas, Esq.
Jason M. Wucetich, Esq.
Wucetich & Korovilas LLP
222 N. Pacific Coast Hwy., Ste. 2000
El Segundo, CA 90245
T: (310) 335-2001
F: (310) 394-0811
E: dimitri@wukolaw.com
E: jason@wukolaw.com

*Counsel for Plaintiff-Appellant*

**Oral Argument Scheduled for September 12, 2025**

Brief filed: May 16, 2025

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1823

**Short Case Caption** Lesko v. Untied States

**Filing Party/Entity** Appellant Jillian Lesko

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/19/2025

Signature: /s/ Dimitrios V. Korovilas

Name: Dimitrios V. Korovilas

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Appellant Jillian Lesko | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Dimitrios V. Korovilas | Wucetich & Korovilas LLP | |
| Jason M. Wucetich | Wucetich & Korovilas LLP | |
| Michael M. Morrison | Alexander Morrison + Fehr LLP | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

CERTIFICATE OF INTEREST…………………………………………… i

TABLE OF CONTENTS…………………………………………………… v

TABLE OF AUTHORITIES……………………………………………… viii

INTRODUCTION……………………………………………………….. 1

JURISDICTIONAL STATEMENT………………………………………. 1

STATEMENT OF THE ISSUES…………………………………………. 2

STATEMENT OF THE CASE …………………………………………… 2

A. Ms. Lesko's Overtime Claim Based on an Inducement Theory……… 2

B. The Arguments Below and the Court of Federal Claims' Order…….. 5

C. Ms. Lesko's Appeal……………………………………………….. 8

STANDARD OF REVIEW……………………………………………… 9

SUMMARY OF THE ARGUMENT…………………………………… 10

ARGUMENT…………………………………………………………. 13

A. The Court Should Interpret "Officially Ordered or Approved" in 5 U.S.C. § 5542(a) as Encompassing Ms. Lesko's Inducement Theory……………………………………………… 14

1. The Supreme Court's Decision in *Loper* Requires that this Court Exercise its Independent Judgment in Interpreting "Officially Ordered or Approved" and Not Defer to OPM's Interpretation ……………………………………….. 14

**TABLE OF CONTENTS (cont'd)**


2. In Exercising its Independent Judgment, this Court Should Interpret "Officially Ordered or Approved" the Same Way Courts Interpreted it For Over 40 years — as Encompassing Inducement.......... 15

    a. Courts Considering the Full Scope of the Statutory Right to Overtime Pay Have Consistently Held that "Officially Ordered or Approved" Does Not Require Written Authorization.......... 15

    b. The Plain Language of the Statute Unambiguously Does Not Require Written Authorization.......... 18

    c. The Government Conceded During Initial Oral Argument that the Plain Language of the Statute Does Not Require Written Authorization.......... 22

    d. The Court Should Not Follow *Doe* Because its Holding that Written Authorization is Required Mistakenly Reasoned that the Statute is Ambiguous, Was Not Based Statutory Interpretation but Rather *Chevron* Deference, Mistakenly Reasoned that *Anderson* Had Been Overruled, and Therefore is Not Properly Subject to *Stare Decisis*...... 24

B. OPM Has Authority to Exercise Discretion in Adopting Regulations Only Insofar as Congress Has Expressly and Constitutionally Delegated Such Authority By Statute to OPM.......... 28

C. No Statutory Provision Delegates to OPM the Authority to Adopt its Writing Requirement, Which Restricts the Scope of the Statutory Right to Overtime Pay.......... 30

1. Congress Has Not Specifically Delegated to OPM the Authority to Define or Interpret "Officially Ordered or Approved"........... 30

2. Any Purported Delegation of Authority to OPM to Restrict the Scope of the Statutory Right to Overtime Pay Would Not Be Constitutional.......... 35

## TABLE OF CONTENTS (cont'd)

3. The Writing Regulation is Not the Product of Reasoned Decision Making, and is Arbitrary, Capricious, and Contrary to Law in that it Abrogates a Statutory Right…………………… 37

CONCLUSION AND RELIEF SOUGHT……………………………….. 44

CERTIFICATE OF COMPLIANCE……………………………………….. 45

CERTIFICATE OF SERVICE…………………………………………….. 46

ADDENDUM

Order and Opinion Dated 3/21/23 Granting Motion to Dismiss……Appx001

Judgment Dated 3/23/23…………………………………………… Appx011

## TABLE OF AUTHORITIES

**Cases**

*ALA Schecter Poultry Corp. v. United States*,
295 U.S. 495, 529-30 (1935)………………………………… 36

*Allen v. United States*,
166 Fed. Cl. 485 (2023)…………………………………….. vi

*Allison v. Ticor Title Ins. Co.*,
979 F.2d 1187 (7th Cir. 1992)……………………………. 21

*Anderson v. United States*,
136 Ct. Cl. 365 (1956)……………………………………… *passim*

*Batterton v. Francis*,
432 U.S. 416 (1977)………………………………........ 29, 31

*Bennett v. United States*,
4 Cl. Ct. 330 (1984)………………………………………… 16, 38

*Bilello v. United States*,
174 Ct.Cl. 1253 (1966)…………………………………….. 20

*Boaz Housing Authority v. United States*,
944 F.3d 1359 (Fed. Cir. 2021)………………………….. 9

*Bowman v. United States*,
7 Cl. Ct. 302 (1985)………………………………………… 16, 38

*Buckley v. United States*,
51 Fed. Cl. 174 (2001)…………………………………….. 38

*Chavez v. Bondi*,
134 F.4th 207 (4th Cir. 2025)........................................... 15

*Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*,
104 U.S. 837 (1984)……………………………………... 6, 14

## TABLE OF AUTHORITIES (cont'd)

*Crowley v. United States*,
53 Fed. Cl. 737 (2002)…………………………………….. 16, 38

*Dayton Power & Light Co. v. FERC*,
126 F.4th 1107 (6th Cir. 2025)…………………………… 15

*Decker v. Northwest Environmental Defense Ctr.*,
568 U.S. 597 (2013)……………………………………… 40

*Deckers Corp. v. United States*,
752 F.3d 949 (Fed. Cir. 2014)…………………………….. 9

*De Costa v. United States*,
22 Cl Ct. 165 (1990)………………………………………. 38

*Denver Union Stock Yard Co. v. Producers Livestock Marketing*,
356 U.S. 282 (1958)……………………………………….. 41

*Doe v. United States*,
372 F.3d 1347 (Fed. Cir. 2004)…………………………… *passim*

*ETSI Pipeline Project v. Missouri*,
484 U.S. 495 (1988)……………………………………… 44

*Fathauer v. United States*,
566 F.3d 1352 (Fed. Cir. 2009)………………………….. 32-33

*Feliciano v. Dep't of Transp.*,
145 S.Ct. 1284 (2025)…………………………………… 18

*FDA v. Brown & Williamson Tobacco Corp*,
529 U.S. 120 (2000)……………………………………… 43-44

*Fix v. United States*,
368 F.2d 609 (Ct. Cl. 1966)……………………………….. 16, 38

*Gaines v. United States*,
158 Ct.Cl. 497 (1962)……………………………………… 17, 38

**TABLE OF AUTHORITIES (cont'd)**

*Gundy v. United States*,
588 U.S. 128 (2019)………………………………………… 36

*Haitian Ctrs. Council, Inc. v. Sale*,
823 F. Supp. 1028 (E.D.N.Y. 1993)……………………….. 35

*Hannon v. United States*,
29 Fed. Cl. 142 (1993)…………………………………….. 38

*Hoefling v. City of Miami*,
811 F.3d 1271 (11th Cir. 2016)…………………………… 21

*Inter-Tribal Council of Arizona, Inc. v. United States*,
956 F.3d 1328 (Fed. Cir. 2020)…………………………… 9

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277 (Fed. Cir. 2013)………………………….. 9

*Leebcor Servs., LLC v. United States*,
171 Fed. Cl. 14 (2024)…………………………………… 20

*LKQ Corp. v. GM Global Tech. Op. LLC*,
102 F.4th 1280 (Fed. Cir. 2024)………………………….. 9

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)……………………………………… *passim*

*Lopez v. Garland*,
116 F.4th 1032 (9th Cir. 2024)………………………….. 15

*Manning v. United States*,
10 Cl. Ct. 651 (1986)…………………………………… 38

*McQuown v. United States*,
199 Ct. Cl. 858 (1972)…………………………………… 16-17, 38

*Mercier v. United States*,
786 F.3d 971 (Fed. Cir. 2015)…………………………… *passim*

## TABLE OF AUTHORITIES (cont'd)


*Michigan v. EPA*,
576 U.S. 743 (2015)………………………………………… 29, 32

*Moctezuma-Reyes v. Garland*,
124 F.4th 416 (6th Cir. 2024)…………………………… 34

*Mumbower v. Callicott*,
526 F.2d 1183 (8th Cir. 1975)……………………………. 20

*Office of Personnel Mgmt v. Richmond*,
496 U.S. 414 (1990)………………………………………… 6, 25-26

*Panama Refining Co. v. Ryan*,
293 U.S. 388 (1935)………………………………………… 36

*Pickens v. Hamilton-Ryker IT Solutions, LLC*,
133 F.4th 575 (6th Cir. 2025)…………………………….. 32, 36

*Producers Livestock Marketing Ass'n v. United States*,
241 F.2d 192 (10th Cir. 1957)……………………………… 41

*Rapp v. United States*,
340 F.2d 635 (Ct. Cl.1964)………………………………. 16-17, 38

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979)…………………………………….. 21

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
719 F.3d 1305 (Fed. Cir. 2013)…………………………. 18

*Schweiker v. Hansen*,
450 U.S. 785 (1981)………………………………………… 6, 25, 41

*Sharma v. Peters*,
756 F.Supp. 3d 1271 (M.D. Ala. 2024)…………………. 34

*South Corp. v. United States*,
690 F.2d 1368 (Fed. Cir. 1982)…………………………… 5, 9-10

*Texas Med. Ass'n v. U.S. Dep't Health & Human Servs.*,
120 F.4th 494 (5th Cir. 2024)…………………………….... 30, 34, 40

*Union Pac. Railroad Co. v. Surface Transp. Bd.*,
113 F.4th 823 (8th Cir. 2024)………………………….…... 15

*United States v. J. Larionoff*,
431 U.S. 864 (1977)……………………………………….. 40

*Utility Air Regulatory Group v. EPA*,
573 U.S. 302 (2014)……………………………………….. 40

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)……………………………………….. 36

*Wayman v. Southhard*,
10 Wheat 1. 43 L.Ed 253 (1825)…………………………… 29, 32

**Const.**

U.S. Const., Art. 1, § 1…………………………………………. 36

**Statutes**

5 U.S.C. § 706…………………………………………………… 13, 36-38

5 U.S.C. § 1104………………………………………………… 2, 30-31

5 U.S.C. § 5548………………………………………………… 2, 30-31

5 U.S.C. § 5542(a)……………………………………………… *passim*

28 U.S.C. § 46…………………………………………………… 1

28 U.S.C. § 1295(3)……………………………………………… 1

## TABLE OF AUTHORITIES (cont'd)


29 U.S.C. 203(g)………………………………………………… 20

38 U.S.C. § 7453(e)(1)………………………………………… 7-8

42 U.S.C. § 402(g)(1)(D)……………………………………… 41

42 U.S.C. § 1983……………………………………………… 21

**Regulations**

5 C.F.R. 550.111(c)…………………………………………. *passim*

20 C.F.R. § 404.602…………………………………………. 41

42 C.F.R. § 482.23(a)-(b)…………………………………… 39-40

**Rules**

Fed. Cir. R. 28(c)……………………………………………… 1

Fed. Cir. R. 32(b)(2)-(3)……………………………………… 45

Fed. R. App. P. 26(b)………………………………………… i

Fed. R. App. P. 32(f), (g)(1)………………………………… 45

Fed. R. App. P. 40(c)……………………………………….. 1

**Misc.**

Black's Law Dictionary (12th ed.)………………………… 19, 34

*Lesko v. United States*,
Case No. 23-1823, Oral Argument (Fed. Cir. Oct. 9, 2024)… 22, 27

Merriam-Webster Collegiate Dictionary (11th ed.)………………… 18

## INTRODUCTION

Appellant and plaintiff below, Jillian Lesko, respectfully submits this *en banc* opening brief in further support of her appeal, pursuant to this Court's March 18, 2025, order that this case be heard *en banc* under 28 U.S.C. § 46 and Fed. R. App. P. 40(c). Docket Item No. 49. Ms. Lesko appeals the Court of Federal Claims' opinion and order dated March 21, 2023, and judgment entered March 23, 2023. Ms. Lesko respectfully requests that this Court reverse the Court of Federal Claims' opinion and order dated March 21, 2023, which granted the motion by defendant United States of America to dismiss her putative class action complaint in its entirety for failure to state a claim, and vacate the judgment entered March 23, 2023. *See* Appx001-011.[1]

## JURISDICTIONAL STATEMENT

The Federal Circuit has exclusive jurisdiction over this appeal because it is an appeal from a final decision of the Court of Federal Claims. 28 U.S.C. § 1295(3). The Court of Federal Claims has jurisdiction over this case because it involves claims against the United States. 28 U.S.C. § 1491; 38 U.S.C. § 7453; 5 U.S.C. § 5542. The Court of Federal Claims issued its opinion and order granting the United States' motion to dismiss this case in its entirety on March 21, 2023,

[1] Pursuant to Fed. Cir. R. 28(c)(1)(A) and (c)(2), the lower court's order and judgment are attached to this brief as an addendum and bear the same pagination as in the previously-filed appendix: Appx001-Appx011. This same addendum accompanied Ms. Lesko's previously filed opening brief.

and entered judgment on March 23, 2023. Appx001-Appx011. Ms. Lesko filed a timely notice of appeal on April 24, 2023.

## STATEMENT OF THE ISSUES

Pursuant to the Court's March 18, 2025, *en banc* order, Docket Item No. 49, the issues in this brief are limited to the following:

1. Considering *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), how should "officially ordered or approved" in 5 U.S.C. § 5542(a) be interpreted?

2. Is this a case in which "the agency is authorized to exercise a degree of discretion" such that the Office of Personnel Management ("OPM") has authority to adopt its writing requirement? *Loper*, 603 U.S. at 394.

3. Is there a statutory provision (e.g., 5 U.S.C. § 1104, 5548) that provides such authority?

## STATEMENT OF THE CASE

### A. Ms. Lesko's Overtime Claim Based on an Inducement Theory

Ms. Lesko served her country as a nurse practitioner for Indian Health Service ("IHS"), including during the recent COVID-19 pandemic. Appx073-074, 093-095. Among other causes of action, Ms. Lesko's first amended complaint ("FAC") asserts a claim for overtime pay pursuant to the Federal Employees Pay

Act ("FEPA"), 5 U.S.C. § 5542, based on an inducement theory.[2] Appx080-89. Section 5542 provides that overtime compensation "shall be paid" for overtime hours that are "officially ordered or approved." 5 U.S.C. § 5542(a). Ms. Lesko's theory alleges that overtime work was officially ordered or approved via inducement, meaning that supervisors and managers, along with the needs of the job and workplace policies, expected and required the work to be performed and that workers faced discipline or termination if they failed to comply. Appx082-088.

Specifically, the FAC alleges that during the COVID-19 pandemic, "IHS facilities were extremely busy and stretched to their limits." Appx082-083. Even prior to the COVID pandemic, nurses could not complete all required job duties due to the high number of patients assigned to them. Appx086. This resulted in nurses being forced to work long hours — after their tours of duty and without pay — to meet the needs of patients and the requirements of the job on a continuous, consistent, and regular basis. Appx082-088. The FAC alleges that management and supervisors were aware nurses were working well past their scheduled tours of duty without additional pay, expected and required such work to be completed, and would discipline those nurses who failed to complete all necessary work.

[2] Ms. Lesko's first amended complaint asserts five causes of action, which are detailed in her previously filed opening appellate brief. *See* App.'s Brief at 5. Pursuant to the Court's March 18, 2025, order, this brief limits discussion to facts relevant to Ms. Lesko's claims under 5 U.S.C. § 5542.

Appx082-088.

The FAC alleges that "[s]upervisors and managers regularly and routinely required nurses to stay after hours and work without compensation to meet the patient demands presented during the pandemic." Appx082. The FAC alleges that "nurses were required to work long hours, well over their regularly scheduled tours of duties to provide necessary and required Covid-19 pandemic related care." *Id.* It asserts that "IHS willfully, deliberately and intentionally failed to pay its nurses overtime for additional, Covid-19 related hours." *Id.* The FAC alleges that Ms. Lesko and other nurses were required to respond to electronic alerts and messages at all hours of the day, including when purportedly off the clock. Appx083-84. To ignore these messages, the FAC alleges, would jeopardize the health and safety of their patients and/or not meet nursing professional standards for acceptable patient care. Appx084. The FAC alleges that supervisors and managers not only knew of this additional work, but required it to be performed to meet acceptable standards for IHS patient care. *Id.* If the work was not completed, Ms. Lesko and other nurses risked subjecting significant harm, or even death, to their patients and placing themselves at risk of discipline and/or losing their professional licenses and/or subjecting IHS to medical malpractice claims. *Id.* The FAC alleges that supervisors and management "ordered and/or approved this required overtime work through expectation, requirement and/or inducement" and that nurses face

discipline if the additional overtime work is not performed, and are subject to constant pressure to perform it. Appx084-85. The FAC further alleges that supervisors and management are incentivized to withhold overtime pay through IHS's issuance of bonuses for staying within budget. *Id.* The FAC also alleges that a shortage of nurses during the pandemic led to additional pressure on nurses to perform overtime. Appx086. The FAC further specifically alleges that nurses are required to perform all required tasks, even if doing so is impossible within allotted shift time. Appx086-087.

**B. The Arguments Below and the Court of Federal Claims' Order**

Ms. Lesko based the viability of her inducement theory of overtime on, among other cases, *Mercier v. United States*, 786 F.3d 971, 982 (Fed. Cir. 2015) and *Anderson v. United States*, 136 Ct. Cl. 365, 371 (1956).[3] *Anderson* was issued by the Court of Claims, which is a predecessor court to the Federal Circuit whose decisions constitute precedent in the Federal Circuit. *South Corp. v. United States*, 690 F.2d 1368 (Fed. Cir. 1982). In both *Anderson* and *Mercier*, the courts considered the statutory right to overtime pay created by the "officially ordered or approved language" in § 5542 and held that the right encompassed pay for overtime work that is induced, regardless of any regulation that might purport to

[3] Appellant's summary of the arguments made below and the Court of Federal Claims' order are limited to the issues relevant to this Court's March 18, 2025 *en banc* order.

require the work to be authorized in writing, such as 5 C.F.R. 550.111(c) — the regulation at issue in this appeal.[4] *Mercier*, 786 F.3d at 982; *Anderson*, 136 Ct. Cl. at 371.

The government did not argue below that Ms. Lesko failed to adequately plead an inducement theory of overtime. Rather, it argued that under *Doe v. United States*, 372 F.3d 1347, 1362 (Fed. Cir. 2004), an inducement theory is not viable when a regulation exists that requires overtime to be authorized in writing. In *Doe*, which preceded *Mercier*, a three-judge panel of the Federal Circuit reasoned that *Anderson* had been implicitly overruled by *Schweiker v. Hansen*, 450 U.S. 785 (1981) and *Office of Personnel Mgmt v. Richmond*, 496 U.S. 414 (1990). The *Doe* court reasoned that *Hansen* stood for the proposition that a writing requirement is permissible because it is a "mere procedural requirement" that does not add to the substantive requirements of the statute. *Doe*, 372 F.3d at 1355-56 (citing *Hansen*, 450 U.S. at 785). The *Doe* court also reasoned that *Richmond* held that equitable considerations cannot grant a money remedy Congress did not authorize. *Doe*, 372 F.3d at 1356-57 (citing *Richmond*, 496 U.S. at 417-18, 426, 429). The *Doe* court further reasoned that the writing-requirement regulation found in 5 C.F.R. § 550.111(c) was entitled to deference under *Chevron, USA, Inc. v. Natural*

[4] Section 550.111reads in relevant part that overtime work "may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c).

*Resources Defense Council, Inc.*, 104 U.S. 837 (1984). *Doe*, 372 F.3d at 1358-62. In light of its perceived overruling of *Anderson* and *Chevron* deference, the *Doe* court held that the writing-requirement regulation of § 550.111(c) was a permissible regulation and enforceable. In this case, the government therefore argued that, under *Doe*, Ms. Lesko's overtime claim based on inducement should be dismissed because of the writing-requirement regulation in § 550.111(c).

Appellant argued below that *Anderson* remains good law, that *Doe*'s reasoning was erroneous, and that the Federal Circuit made this clear in *Mercier*. As argued by Appellant below, in *Mercier* a different three-judge panel of the Federal Circuit considered the same "officially ordered or approved" language that appears in 38 U.S.C. § 7453(e)(1), the statute which provides overtime pay for nurses employed by the Department of Veterans Affairs. *Mercier*, 786 F.3d at 972. The *Mercier* court reasoned that the words "officially ordered or approved" should have the ***same*** meaning as the words which appear in § 5542(a) for Title 5 employees. *Mercier*, 786 F.3d at 972, 982. Contrary to *Doe*, the *Mercier* panel reasoned that *Hansen* and *Richmond* did not overrule, and were irrelevant to, the holding of *Anderson* and the cases that followed it. *Id.* at 980-82. The *Mercier* panel also reasoned that *Doe* did not overrule, and could not have overruled *Anderson*, because only an *en banc* panel of the Federal Circuit would have the power to overrule *Anderson*, which was a decision of the predecessor Court of

Claims and therefore precedent in the Federal Circuit. *Id.* Accordingly, in *Mercier*, the panel held that *Anderson* remains good law and that the statutory language "officially ordered or approved" includes induced overtime. *Id.*

The Court of Federal Claims agreed with the government and, following *Doe*, dismissed Ms. Lesko's overtime claim based on inducement. Appx005-007. The court distinguished *Mercier* on grounds that it was relevant only to Title 38 employees, which Ms. Lesko was not, and because there was no regulation interpreting § 7453(e)(1) that required *Chevron* deference (notwithstanding *Mercier*'s reasoning that the statutory language "officially ordered or approved" that appears in both 5 U.S.C. § 5542(a) and 8 U.S.C. § 7453(e)(1) should be afforded the same meaning). *Mercier*, 786 F.3d at 972, 982.

**C. Ms. Lesko's Appeal**

Ms. Lesko appealed, arguing, *inter alia*, that the Court of Federal Claims' order dismissing her overtime claim failed to properly reconcile *Anderson* and *Mercier*, on the one hand, and *Doe* on the other. App. Brief at viii, 8-14.

After all principal briefs were filed, the United States Supreme Court issued its opinion in *Loper*. Oral argument in the instant case was heard on October 9, 2024, by a three-judge panel. Counsel for Ms. Lesko argued, as previously briefed, that *Doe* was wrongly decided and that the Court of Federal Claims erred in following it. In addition, counsel argued that *Loper*'s overruling of *Chevron*

deference further undermined the lower court's reliance on *Doe* and § 550.111(c). On March 18, 2025, the Federal Circuit issued an order setting the case for further hearing *en banc* and ordering new briefing limited to the issues above. *See* Docket Item No. 49.

## STANDARD OF REVIEW

The grant or denial of a motion to dismiss for failure to state a claim is a question of law that is reviewed *de novo*. *Boaz Housing Authority v. United States*, 944 F.3d 1359, 1364 (Fed. Cir. 2021); *Inter-Tribal Council of Arizona, Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020). The Court takes all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Inter-Tribal Council*, 956 F.3d at 1338. A complaint should not be dismissed for failure to state a claim unless the complaint fails to state a claim that is plausible on its face. *Id.* (citing *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013)).

In the Federal Circuit, "a later panel is bound by the determinations of a prior panel, unless relieved of that obligation by an *en banc* order of the court or a decision of the Supreme Court." *Deckers Corp. v. United States*, 752 F.3d 949 (Fed. Cir. 2014). A court sitting *en banc* has the authority to overrule an earlier holding with appropriate explication of the factors compelling removal of that holding as precedent." *LKQ Corp. v. GM Global Tech. Op. LLC*, 102 F.4th 1280,

1293 (Fed. Cir. 2024); *South Corp v. United States*, 690 F.2d 1368, 1370 n.2 (Fed. Cir. 1982). "If conflict appears among precedents . . . it may be resolved by the court in banc in an appropriate case." *South Corp.*, 690 F.3d at 1370 n.2.

**SUMMARY OF THE ARGUMENT**

In light of the Supreme Court's decision in *Loper*, this Court should interpret the language "officially ordered or approved" that appears in 5 U.S.C. § 5542(a) the same way courts interpreted it for over 40 years until *Doe* accorded *Chevron* deference to 5 C.F.R. § 550.111(c). Specifically, the Court should interpret the language as encompassing Ms. Lesko's inducement theory of overtime. *Loper* requires this Court to exercise its own independent judgment when interpreting a statute. *Loper*, 603 U.S. 394-95. This is not a case where the Court is required to define "officially ordered or approved" in the first instance. Nor is it a case where a litigant asks the Court to overturn a single longstanding precedent merely because it relied on *Chevron* deference. Since 1956 in *Anderson* through to 2004 in *Doe*, the law of the land, as stated by numerous courts interpreting "officially ordered or approved," was that the statutory right to overtime pay included compensation for overtime work that was induced. The plain meaning of the statute unambiguously supports this interpretation, which the government conceded at initial oral argument.

Only *Doe* rejected an inducement theory. *Doe*'s holding, however, was not

based on statutory interpretation but instead based on *Chevron* deference to the regulation and mistaken reasoning that the statute was ambiguous. *Chevron* deference has since been overruled. *Doe* also mistakenly reasoned that *Anderson* had been implicitly overruled by *Hansen* and *Richmond*. The *Mercier* court made *Doe*'s errors clear, holding that *Anderson* remains good law. Courts should therefore not be compelled to follow *Doe* as *stare decisis*. Now that *Chevron* is gone, *Doe* should be as well, and what remains should be the numerous longstanding precedents that validate Ms. Lesko's inducement theory.

*Loper* instructs that a court should consider as potentially persuasive an agency's exercise of discretion in interpreting a statute only when Congress has constitutionally delegated authority to an agency to issue regulations and the regulation at issue is within the scope of the delegation. Where such a delegation has been made, the court should determine the constitutional boundaries of the delegated authority and ensure the agency has engaged in reasoned decision-making within those boundaries. Here, no such delegation exists.

No statute specifically authorizes OPM to define the term "officially ordered or approved" or to otherwise adopt the writing regulation. The overtime statute itself, 5 U.S.C § 5542, makes certain specific delegations of authority to OPM, none of which concern defining "officially ordered or approved." This is not surprising given that the plain meaning of the statute unambiguously mandates pay

for induced overtime work regardless of written authorization. Section 1104 provides that the President may delegate “authority for personnel management functions” to OPM. But there is no evidence the President has ever delegated to OPM the authority to define the phrase “officially ordered and approved,” nor can “personal management functions” include restricting the scope of a statutory right. Section 5548 provides that OPM “may prescribe regulations . . . necessary for the administration of this subchapter.” This not a *carte blanche* delegation to OPM to adopt whatever regulations it likes, however. It is a delegation tailored and limited by the words “necessary” to “administration”. OPM’s writing requirement is not necessary to administer overtime given the plain meaning of the statute. It also cannot be considered necessary given that, for decades, courts consistently held the writing requirement invalid and so the government operated without it. Furthermore, any regulation to “administer” the statutory rights conferred by § 5542(a) should be consistent with the judicially-defined scope of “officially ordered or approved,” not restrict it, as 5 C.F.R. § 550.111(c) does here.

Any statute the government might assert purports to delegate to OPM the authority to adopt the writing requirement would, additionally, not meet *Loper*’s first requirement that the delegation be constitutional, in that such a delegation would unconstitutionally usurp legislative authority. Congress has not, and cannot, delegate to OPM the authority to adopt a regulation that expressly contradicts the

statute.

Even if it were within the scope of a statutory delegation, OPM's writing regulation should be deemed invalid because it cannot be considered the product of reasoned decision making, is unreasonable, arbitrary, capricious, and manifestly contrary to law. As reflected in *Anderson*, its progeny, and other cases applying the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, an agency regulation cannot abrogate a statutory right. Although the government characterizes the writing regulation as a mere procedural requirement, it is, in fact, an attempt to contradict the statute, restrict the scope of the statutory right to overtime pay as interpreted by the courts, and interferes with other legal duties of hospitals and nurses to ensure 24-hour patient care as needed.

## ARGUMENT

This Court sitting *en banc* should reverse the Court of Federal Claims' order dismissing Ms. Lesko's overtime claim and do what *Mercier* could not — explicitly overrule *Doe*. Ms. Lesko's case directly impacts how all federal workers hired under Title 5 are paid. Her case will also likely be the first in the Federal Circuit, and among the first nationwide at the circuit level, to apply *Loper* comprehensively and examine the interplay between a statute and a conflicting regulation post-*Chevron*-deference. Ms. Lesko greatly appreciates the Court's *en banc* consideration, which is necessary to reconcile conflicting precedents amidst a

changing legal landscape.

## A. The Court Should Interpret "Officially Ordered or Approved" in 5 U.S.C. § 5542(a) as Encompassing Ms. Lesko's Inducement Theory

### 1. The Supreme Court's Decision in *Loper* Requires that this Court Exercise its Independent Judgment in Interpreting "Officially Ordered or Approved" and Not Defer to OPM's Interpretation

*Loper* requires that courts exercise their independent judgment in interpreting a statute and not defer to agency interpretation simply because the statute may be ambiguous. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 371-72, 394-95 412-113 (2024). The *Loper* decision overruled the Supreme Court's previous holding in *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 104 U.S. 837 (1984). In that case, the Supreme Court established what came to be known as the *Chevron* deference framework, under which courts were to defer to federal agencies' interpretations of ambiguous statutes, even if the court disagreed with the interpretation, so long as the agency interpretation was reasonable. *Chevron*, 104 U.S. 842-43. In overruling *Chevron*, *Loper* instructed that courts must exercise their independent judgment in determining the meaning of statutory provisions and in deciding whether an agency has acted within its statutory authority, and that they may not defer to an agency interpretation simply because the statute is ambiguous. *Id.* at 369, 371-72, 394-95, 412-13. Here, the statute is not ambiguous, as set forth below. But even if it were, *Loper* requires that it be construed by the courts absent express statutory delegation otherwise.

Accordingly, this Court's role in interpreting the "officially ordered or approved" language in 5 U.S.C. § 5542(a) begins with exercising its own judgment to independently interpret the statute. *See*, *e.g.*, *Union Pac. Railroad Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024) (applying *Loper* and using independent judgment); *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) (same); *Chavez v. Bondi*, 134 F.4th 207, 212-13 (4th Cir. 2025) (same); *Dayton Power & Light Co. v. FERC*, 126 F.4th 1107, 1122-23 (6th Cir. 2025) (same).

### 2. In Exercising its Independent Judgment, this Court Should Interpret "Officially Ordered or Approved" the Same Way Courts Interpreted it For Over 40 years — as Encompassing Inducement

#### a. Courts Considering the Full Scope of the Statutory Right to Overtime Pay Have Consistently Held that "Officially Ordered or Approved" Does Not Require Written Authorization

In exercising its independent judgment, this Court should interpret the language "officially ordered or approved" that appears in 5 U.S.C. § 5542(a) the same way courts interpreted it for over 40 years until *Doe* accorded *Chevron* deference to 5 C.F.R. § 550.111(c) — as encompassing an inducement theory of overtime.

This is not an issue of first impression. To the contrary, as set forth above, the Federal Circuit and its predecessor court, and well as various lower level courts, have repeatedly addressed this exact question of the statutory interpretation of "officially ordered or approved" and consistently held that it encompasses

overtime that is induced but not authorized in writing. *See Mercier v. United States*, 786 F.3d 971, 982 (Fed. Cir. 2015) ("*Anderson*'s interpretation of 5 U.S.C. § 5542, namely that overtime is 'officially ordered or approved' where it is induced by one with the authority to order or approve overtime but not expressly directed, remains good law."); *Anderson v. United States*, 136 Ct. Cl. 365, 370 (1956); *see also Crowley v. United States*, 53 Fed. Cl. 737, 789 (2002), *aff'd in part on other grounds, rev'd in part on other grounds*, 398 F.3d 1329 (Fed. Cir. 2005); *Buckley v. United States*, 51 Fed. Cl. 174, 217-18 (2001), *aff'd in part on other grounds, rev'd in part on other grounds sub nom., Crowley*, 398 F.3d 1329; *Hannon v. United States*, 29 Fed. Cl. 142, 149 (1993) ("As the case law has developed, however, this authorization need not necessarily be express. 'Overtime work performed with the knowledge and inducement of supervisory personnel is deemed to be "officially ordered or approved." The law will treat as issued those orders that ought to have been issued.'") (quoting *Manning v. United States*, 10 Cl. Ct. 651, 663 (1986)); *De Costa v. United States*, 22 Cl Ct. 165, 176 (1990), *aff'd on other grounds*, 987 F.2d 1556 (Fed. Cir. 1993); *Bowman v. United States*, 7 Cl. Ct. 302, 308 n.6 (1985); *Bennett v. United States*, 4 Cl. Ct. 330, 337 (1984); *McQuown v. United States*, 199 Ct. Cl. 858 (1972); *Fix v. United States*, 368 F.2d 609, 613 (Ct. Cl. 1966) (applying *Anderson* and holding that an agency could not prohibit compensating overtime that was "required or induced by responsible officials"); *Rapp v. United States*, 340

F.2d 635, 644–45 (Ct. Cl.1964) (applying *Anderson* and compensating induced overtime because the agency "could not—by arbitrarily characterizing the [overtime] as 'voluntary'—abrogate plaintiffs' rights under the statute"); *Gaines v. United States*, 158 Ct. Cl. 497 (1962), *cert. denied*, 371 U.S. 936 1962) (explaining that *Anderson* "allow[s] recovery [for overtime] even though there may have been no express order, authorization, or approval, and the administrative officials have refused to characterize the work as 'overtime'");

As the court explained in *McQuown* when reasoning that "officially ordered or approved" should include induced overtime:

> The evidence establishes that overtime was necessary, satisfactorily to complete investigation directed to be performed; that failure to work the overtime required to perform investigations would be considered neglect of duty; that if investigators failed to work sufficient overtime, satisfactorily to complete their investigations, they could not maintain high efficiency ratings; that failure to maintain high efficiency ratings could lead to termination of employment; and that investigators were subject to termination of employment for failure to do as directed. ***Accordingly, while the work performed by the claimant in excess of 8 hours per day and 40 hours per week was not expressly ordered, it was exacted from him, with the knowledge of senior supervisory officers of all the circumstances, as a condition of his continued employment, and was therefore not voluntarily rendered, but rather induced and coerced, involuntarily. It was thus in effect, officially ordered and approved by the agency as a whole.***

*McQuown*, 199 Ct. Cl. at 858 ¶ 13 (emphasis added). In other words, work extracted from an employee with knowledge from a supervisor that is a condition of employment and not voluntary constitutes "officially ordered or approved."

Only *Doe* reached a conclusion that written authorization was required, but did so mistakenly and based on *Chevron* deference, not statutory interpretation, and also based on the faulty premise that the statutory language was ambiguous, as set forth below.

Relevant precedents are therefore in accord that "officially ordered or approved" does not require written authorization. Although this Court sitting *en banc* is empowered to consider the issue anew, it should do so "bearing in mind the respect due to long-standing panel precedents even when the *en banc* court is newly considering an issue." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316-17 (Fed. Cir. 2013) (*en banc*).

**b. The Plain Language of the Statute Unambiguously Does Not Require Written Authorization**

Even considering this issue anew, this Court should reach the same conclusion as these prior cases based on the plain text of the statute. *See Feliciano v. Dep't of Transp.*, 145 S.Ct. 1284, 1290-91 (2025) (ordinary meaning of statutory words should be given effect, absent evidence Congress defined a statutory word or phrase in a specialized way or employed a term of art with long-encrusted connotations).

Nothing in the plain meaning of "officially ordered or approved" requires written authorization. The dictionary defines "official" as "of or related to an

office, position, or trust; holding an office; having authority."[5] Applied here, this means requiring a supervisor, e.g., someone with authority to approve overtime, or policies implemented or enforced by such persons that require overtime work to be performed. "Order" is defined as "to give an order to, command".[6] In this context, this means the overtime work must be required, non-voluntary. "Approved" means "to have or express a favorable opinion of; to accept as satisfactory; to give formal or official sanction; to take a favorable view."[7] Here, this means that a supervisor with the authority to approve overtime would need to have knowledge that the work is being performed or required to be performed and that the supervisor, through words or conduct or the policies of the workplace, encourages or expects it.

These definitions would distinguish "officially ordered or approved" from the more permissive "suffer or permit to work" standard of the Fair Labor

---

[5] *See* Merriam-Webster Collegiate Dictionary (11th ed.), *official*; Black's Law Dictionary (12th ed.), *official* ("Someone who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers.").

[6] *See* Merriam-Webster Collegiate Dictionary (11th ed.), *order*; Black's Law Dictionary (12th ed.), *order* ("1. A command, direction, or instruction. . . . 2. A written direction or command delivered by a government official, esp. a court or judge."). Although the second definition here references a writing, that reference is in the context of written court orders, not supervisors or managers of a workforce.

[7] *See* Merriam-Webster Collegiate Dictionary (11th ed.), *approve*; Black's Law Dictionary (12th ed.), *approve* ("To give formal sanction to; to confirm authoritatively.").

Standards Act ("FLSA"), 29 U.S.C. 203(g). A requirement for written authorization is not necessary to distinguish the "officially ordered or approved" standard from the "suffer or permit to work" standard. Rather, the distinction is that the first standard requires inducement, expectation, or requirement; whereas the second requires only knowledge and allowing the work to be performed for the employer's benefit. *See Bilello v. United States*, 174 Ct.Cl. 1253, 1258 (1966) (employer's mere knowledge the work is being performed insufficient to satisfy "officially ordered or approved" standard, absent inducement or written order); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) ("suffer or permit to work" standard satisfied when employer knows the work is being performed, allows it to be performed, and benefits from the performance). The plain meaning of "officially ordered or approved" does not require a written authorization element to distinguish it from the FLSA standard.

Notably, "officially ordered or approved" is phrased in the disjunctive, meaning that compensation is required for overtime work that is officially ordered ***or*** approved. The statute therefore expressly contemplates that overtime work could be ordered without being approved, or approved without being ordered, and mandates compensation either way. The disjunctive nature of the phrase makes its scope broad and further supports an interpretation that encompasses overtime work that is induced. *Leebcor Servs., LLC v. United States*, 171 Fed. Cl. 14, 21 (2024)

(citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise.")).

Cases concerning approval in other contexts likewise make clear that approval can come from words or acts and does not require the formality of a writing. *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1197 (7th Cir. 1992) ("A principal affirms the unauthorized acts of an agent if the principal indicates ***by his words or acts*** that he or she accepts and treats the conduct of the agent as authorized.") (emphasis added). In cases under 42 U.S.C. § 1983, case law is clear that although liability extends to a municipality only for "acts which the municipality has officially sanctioned or ordered" there are several different ways of satisfying that standard, including where policymakers "have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure". *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Liability can also be established on a ratification theory where the policy maker "had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015). In either of these scenarios, the law allows a plaintiff to show an action has been "officially sanctioned or ordered" without explicit written authorization.

Accordingly, based on the statute's plain language, this Court, like *Anderson*

and the cases that followed it through to *Mercier*, should interpret "officially ordered or approved" as encompassing Ms. Lesko's inducement theory.

#### c. The Government Conceded During Initial Oral Argument that the Plain Language of the Statute Does Not Require Written Authorization

The government conceded during initial oral argument in this case on October 9, 2024, that the plain statutory language of 5 U.S.C. § 5542(a) includes entitlement to overtime compensation for work that is induced, or expressly permitted verbally, even if not authorized in writing. *Lesko v. United States*, Case No. 23-1823, Oral Argument at 24:32-30:40 (Fed. Cir. Oct. 9, 2024), *available at* https://www.cafc.uscourts.gov/ 10-10-2024-2023-1823-lesko-v-us-audio-uploaded/ (hereinafter "Lesko Oral Argument").

> COURT (Chief Judge Moore ("Moore")): But let's just forget about everything else. Everything. "Officially ordered or approved". That's what Congress said. They said people get overtime compensation when it's officially ordered or approved. Now, suppose in this case, and I may not get the facts exactly right so, so we'll call it a hypothetical. Suppose in this case, this nurse was ordered by her supervisor under threat of termination during COVID to remain on the job and work overtime. And he even told her, and you're going to get paid for it. That's not officially ordered or approved under the statute? She was forced to stay under threat of termination in an emergency and did so. She doesn't get overtime pay? You think Congress intended to delegate to the agency the ability to say, no, no overtime for you?
>
> GOVERNMENT (Ms. Geddes): Obviously, that would be a very extreme case, but ***yes***, Congress delegated to the agency the authority to pass laws and...

> COURT (Moore): That contradict the clear language of the statute?
>
> GOVERNMENT (Ms. Geddes): It does not contradict the language, it simply sets regulatory requirements. This court recognized...
>
> COURT (Moore): This isn't regulatory requirement. ***Ordered or approved, clearly, the plain language of that could include both verbal and written, couldn't it?***
>
> GOVERNMENT (Ms. Geddes): ***Yeah***, and that's what this court found in *Anderson*.
>
> COURT (Moore): So the ***plain language*** of the statute afforded this person and all similarly situated employees ***a substantive entitlement*** to pay if they're forced to work overtime. But you're saying the agency is allowed to take back some of what Congress gave?
>
> GOVERNMENT (Ms. Geddes): ***Yes***, that's exactly what the Supreme Court held in *Hansen*. . .

Lesko Oral Argument at 24:32-26:07 (emphasis added). After some discussion of whether *Doe* later treated the statute as ambiguous:

> COURT (Moore): But you and I both agreed a few minutes ago that the plain meaning of officially ordered or approved included both writing and oral orders. So where is the ambiguity? Where is the ambiguity if we both agree the plain meeting includes both?
>
> GOVERNMENT (Ms. Geddes): Well, it's not about ambiguity.

Lesko Oral Argument at 28:17-28:36.

The government accordingly concedes that the statute's plain language is not ambiguous and that it encompasses an inducement theory of overtime.

**d. The Court Should Not Follow *Doe* Because its Holding that Written Authorization is Required Mistakenly Reasoned that the Statute is Ambiguous, Was Not Based Statutory Interpretation but Rather *Chevron* Deference, Mistakenly Reasoned that *Anderson* Had Been Overruled, and Therefore is Not Properly Subject to *Stare Decisis***

Only *Doe* breaks from the precedents holding that "officially ordered or approved" encompasses an inducement theory. But the Court should not follow *Doe* for four reasons.

First, *Doe* mistakenly reasoned that the statutory language "officially ordered or approved" is ambiguous, despite explicitly acknowledging that "the statutory terms 'order' or 'approve' are broad enough to encompass either written or oral communications (or both)." *Doe*, 372 F.3d at 1355. *Anderson*, in contrast, did not find the language ambiguous, holding that it plainly encompasses oral communications and inducement. *Anderson*, 136 Ct. Cl. at 370. As the Court noted during the initial oral argument in this case, this creates a conflict:

> COURT (Judge Chen "Chen"): It [i.e., *Doe*] also found that the statute was ambiguous, right?
>
> GOVERNMENT (Ms. Geddes): Yes.
>
> COURT (Chen): And how do you reconcile that with *Anderson*, which didn't seem to have any problem interpreting the same terms?
>
> GOVERNMENT (Ms. Geddes): I don't think *Anderson* ever had the reason to specifically consider whether the statute was ambiguous because it wasn't….
>
> COURT (Judge Stoll ("Stoll")): But they interpreted it.

> GOVERNMENT (Ms. Geddes): They interpreted it, yes.
>
> COURT (Stoll): Doesn't, you know, if you interpret something, doesn't that mean that you think that it's not ambiguous? How can you interpret something if it's ambiguous?
>
> GOVERNMENT (Ms. Geddes): Well, the court has to interpret it whether it considers it ambiguous or not.
>
> COURT (Stoll): So the only time you get to the question of whether something is ambiguous is because you've used all your canons of construction, and then you still can't figure out what it means, right?
>
> GOVERNMENT (Ms. Geddes): Yeah, I suppose that would usually be the case.
>
> COURT (Stoll): That is usually the case. And so therefore, it does seem ***inconsistent***, right?
>
> GOVERNMENT (Ms. Geddes): I can't say whether the *Anderson* court would have found the statute to be ambiguous. It ultimately ruled on its interpretation, but it had no choice other than to do so.

Lesko Oral Argument at 27:17-28:17 (emphasis added). The conflict between *Anderson* and *Doe* on whether the statutory language is ambiguous undermines *Doe*'s value as *stare decisis*.

Second, *Doe* has no real bearing on the proper interpretation of the statutory language "officially ordered or approved" because, as *Mercier* noted, its holding was not based on interpretation of the statute but rather deference to the regulation:

> Where *Anderson* held the regulation invalid and accordingly considered the full scope of the statutory right, *Doe* enforced the writing regulation and had no cause to consider whether the phrase 'officially ordered or approved' encompassed forms of order or

> approval that might by their nature never be put "in writing." The question before us today—whether overtime may be 'ordered or approved' by inducement, albeit under a different statute—was simply never considered by the *Doe* court.

*Mercier*, 786 F.3d at 981-92.

Third, *Doe* relied on *Chevron* deference, which has since been overruled. The Supreme Court cautioned in *Loper* that cases that were decided under *Chevron* remain subject to statutory *stare decisis* despite the Court's change in interpretative methodology. *Loper*, 603 U.S. at 412 ("Mere reliance on *Chevron* cannot constitute a 'special justification' for overruling such a holding"). Here, however, there are multiple precedents reaching different outcomes that require reconciliation. Further, *Doe*'s mistakes extend beyond *Chevron* deference, as the *Mercier* court explained. Accordingly, *Doe*'s holding should not be determinative based on *stare decisis*, and the Court should reconsider *Doe*'s holding in the absence of *Chevron* deference.

Finally, *Doe*'s holding was based on the mistaken premise that the *Anderson* line of cases had been implicitly overruled by *Hansen* and *Richmond.* As the *Mercier* court explained, *Doe* did not have the power to overrule *Anderson.* *Mercier*, 786 F.d at 981 ("In the absence of authority from the Supreme Court, this court could only overrule the 'inducement' aspect of the *Anderson* line of cases were we to sit en banc. . . It follows, of course, that neither this panel nor the *Doe* court could overrule *Anderson*'s interpretation that inducement satisfies FEPA's

‘officially ordered or approved’ requirement.”). *Doe* reasoned, however, that the *Anderson* line of cases had been implicitly overruled by the Supreme Court’s holdings in *Schweiker v. Hansen*, 450 U.S. 785 (1981) and *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990). *Doe*, 372 F.3d at 1355-57. The *Doe* court reasoned that *Hansen* stood for the proposition that a regulation may permissibly add a procedural writing requirement to the substantive requirements of a statute. *Id.* at 1355. The *Doe* court reasoned that *Richmond* stood for the proposition that equitable considerations could not impose liability on the government for money remedies Congress did not authorize. *Id.* at 1356-57. Together, *Doe* reasoned that these cases implicitly overruled *Anderson*’s holding. *Doe*, 372 F.3d at 1355-57.

*Doe*’s reasoning about the implicit overruling of *Anderson* was wrong. *Mercier*, 786 F.3d at 978-79. As the *Mercier* court explained, not only did *Doe* lack the power to overrule *Anderson*, but also, “[n]either *Hansen* nor *Richmond* have any relevance to *Anderson*’s interpretation of FEPA.” *Id.* at 980. As *Mercier* reasoned:

> *Hansen* and *Richmond* denied the plaintiff’s claim of entitlement under principles of equity to a benefit otherwise denied the plaintiff by a valid regulation (in *Hansen* ) or statute (in *Richmond* ). Those cases reached this result based on the principle that it is “the duty of all courts to observe the conditions defined by Congress for charging the public treasury.” . . . The issue here is not whether the nurses are entitled to a payment from the public treasury without Congressional authorization. It is clear that Congress, in both § 5542 of FEPA and §

> 7453 of Title 38, did authorize the payment of "officially ordered or approved" overtime work. Instead, the question *Anderson* decided when it interpreted the FEPA provision, and the question before us now with respect to § 7453, is whether plaintiffs' overtime is within the scope of the statutory grant. Neither *Hansen* nor *Richmond* bear on that question, all the more so because they arose under different statutory schemes.

*Mercier*, 786 F.d at 980-81. Accordingly, *Mercier* reasoned that *Anderson* was not overruled and that its holding "officially ordered or approved" encompasses inducement "remains good law." *Mercier*, 786 F.3d at 982.

Accordingly, this Court should not follow *Doe*, and*,* exercising its own independent judgment, should interpret "officially ordered or approved" in 5 U.S.C. § 5542(a) as encompassing overtime that is induced.

### B. OPM Has Authority to Exercise Discretion in Adopting Regulations Only Insofar as Congress Has Expressly and Constitutionally Delegated Such Authority By Statute to OPM

*Loper* makes clear that an agency has authority to exercise discretion in administering statutes only insofar as Congress constitutionally delegates by statute such authority to the agency and the agency acts within the bounds of the statutory delegation. *Loper*, 603 U.S. at 394-95. Here, no statutory delegation permits OPM's adoption of the writing requirement in 5 C.F.R. § 550.111(c).

The Supreme Court acknowledged that "[i]n a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Loper*, 603 U.S. at 394-95. The Court made clear,

however, that such authority is a creature of statute, and that an agency's discretionary authority is bound by the scope of the statutory delegation. *Id.* ("When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. The court fulfills that role by recognizing constitutional delegations, 'fix[ing] the boundaries of [the] delegated authority, . . . and ensuring the agency has engaged in "reasoned decisionmaking" within those boundaries.'").

The Supreme Court noted that Congress has often enacted such statutory delegations. *Id.* For example, it noted that some statutes "expressly delegate" to an agency the authority to give meaning to a particular term. *Id.* (citing *Batterton v. Francis*, 432 U.S. 416, 425 (1977)). Others empower an agency to prescribe rules to "fill up the details" of a statutory scheme. *Loper*, 603 U.S. at 395 (citing *Wayman v. Southhard*, 10 Wheat 1. 43 L.Ed 253 (1825)). Congress has also enacted statutes that empower an agency to "regulate subject to the limits imposed by a term of phrase that "leaves agencies with flexibility" such as "appropriate" or "reasonable." *Loper*, 603 U.S. at 395 (citing *Michigan v. EPA*, 576 U.S. 743, 752 (2015)).

The standard espoused in *Loper* does not permit OPM's adoption of its writing requirement. As set forth in the following section, Congress has not

delegated to OPM the authority to define "officially ordered or approved," nor could Congress properly delegate to OPM the ability to contradict the plain language of the statute, which permits an inducement theory.

### C. No Statutory Provision Delegates to OPM the Authority to Adopt its Writing Requirement, Which Restricts the Scope of the Statutory Right to Overtime Pay

#### 1. Congress Has Not Specifically Delegated to OPM the Authority to Define or Interpret "Officially Ordered or Approved"

This Court's order providing that this case be heard *en banc* inquires whether there is any statutory basis for OPM exercising authority to adopt its writing requirement. There is not. The order specifically asks whether 5 U.S.C. § 1104 or § 5548 provides such authority. Neither of these statutes, nor the overtime pay statute itself, § 5542, delegates to OPM authority to adopt the writing requirement.

Despite making various other specific delegations of authority to OPM, nowhere has Congress specifically delegated to OPM the authority to define or interpret "officially ordered or approved." To begin with, 5 U.S.C. § 5442 does make certain specific delegations of authority to OPM, but notably none of these concern defining "officially ordered or approved." Section 5442(a) specifically authorizes OPM to issue regulations defining overtime hours for employees subject to section 7 of the Fair Labor Standards Act. Section 5542(h)(1)(B) and (2)(A)(ii)(IV) empower the OPM Director to make certain determinations and

adopt policies regarding firefighters. None of these specific delegations of authority to OPM have anything to do with defining "officially ordered or approved" or with adopting writing requirements for overtime authorization. *See Texas Med. Ass'n v. U.S. Dep't Health & Human Servs.*, 120 F.4th 494, 507-08 (5th Cir. 2024) (invalidating regulation regarding deadlines in part on grounds that no statute specifically delegated rulemaking authority over deadlines).

Section 1104(a)(1) provides that the "President may delegate, in whole or in part, authority for personnel management functions, including authority for competitive examinations, to the Director of" OPM. But neither the government nor case law has identified any such presidential delegation. Nor should "personnel management function" be construed as including the ability to restrict the scope of the statutory right to overtime pay, for the reasons discussed below.

Section 5548 provides that OPM "may prescribe regulations, subject to the approval of the President, necessary for the administration of this subchapter." 5 U.S.C. § 5548(a). This is unlike any of the delegations discussed by the Supreme Court in *Loper*. *Loper*, 603 U.S. at 395. This delegation does not "expressly delegate" to OPM the authority to give meaning to "officially ordered or approved." *Cf. Loper*, 603 U.S. at 395 (citing *Batterton*, 432 U.S. at 425). Nor does this delegation empower OPM to prescribe rules to "fill up the details" of a statutory scheme. *Cf. Loper*, 603 at 395 (citing *Wayman*, 10 Wheat 1. 43 L.Ed

253). This delegation also does not broadly delegate flexibility limited only by what is "appropriate" or "reasonable." *Cf. Loper*, 603 at 395 (citing *Michigan* , 576 U.S. at 752); *see Pickens v. Hamilton-Ryker IT Solutions, LLC*, 133 F.4th 575, 588 (6th Cir. 2025) (court must consider wording and boundaries of any statutory delegation).[8]

Instead, this statute delegates to OPM only the authority to issue regulations that are "necessary" for "administration." Like "officially ordered or approved," the phrase "necessary for the administration" is plain and unambiguous. These words should be afforded their plain meaning. *Fathauer v. United States*, 566 F.3d 1352, 1355-56 (Fed. Cir. 2009) ("The Supreme Court has 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, this first canon is also the last."). Although the prior case law has acknowledged the statutory delegation in § 5548, it has not properly examined its boundaries as *Loper* requires. *See*, *e.g.*, *Anderson*, 136 Ct. Cl. at 369 ("The statute explicitly . . . authorized the issuance of "such regulations as may be necessary for

[8] *Pickens*,133 F.4th at 588 ("[N]ot all agency actions are alike. In some cases, a statute gives an agency no room at all to maneuver, leaving us with the responsibility to honor the statute's 'single, best meaning,' 'fixed at the time of enactment,' whether the agency has the same view or not. . . . But in other cases, a statute delegates authority to an agency to define general terms in the statute. . . . Under those circumstances, we 'respect the delegation' by 'fixing the boundaries of the delegated authority' based on our independent view of the statute and 'ensuring that the agency acts within' those boundaries.")

the administration of . . . this Act."); *Doe*, 372 F.3d at 1352 ("FEPA expressly delegated rulemaking authority to the then Civil Service Commission, providing that '[it] is hereby authorized to issue such regulations . . . as may be necessary for the administration of . . .this Act."). Neither *Anderson* nor *Doe* fully considered how the words "necessary" and "administration" limit the degree and scope of the delegation. Here, the Court should do so, and should find that the regulation exceeds the scope of any statutory delegation.

OPM's writing regulation exceeds the boundaries of § 5548 first because it is not "necessary" to administration of the overtime statute. "Necessary," by definition, is narrower than "appropriate" or "reasonable".[9] As *Fathauer* holds, it is "unnecessary" to give a statutory term a special definition when the word is intended to be given its ordinary meaning. *Fathauer*, 566 F.3d at 1355. Accordingly, for OPM to give a special definition to the term "officially ordered or approved," which is itself plainly worded, is not necessary.

History also shows that the writing regulation is not "necessary" to administration of the overtime statute. Between 1956 when the Court of Claims decided *Anderson* and 2004 when the Federal Circuit issued *Doe*, case law consistently held that the right to overtime pay included compensation for overtime

[9] *See* Black's Law Dictionary (12th ed.), *necessary* ("1. That is needed for some purpose or reason; essential . . . 2. That must exist or happen and cannot be avoided; inevitable.").

work that was induced. There is no evidence that the government was unable to administer overtime pay without an enforceable writing requirement for those 48 years – nor has any case so held. The requirement cannot be considered "necessary" to administration when the government operated without it for decades.

OPM's writing regulation is also not necessary to "administration" of the overtime statute. Administration means the management or performance of duties.[10] As set forth above, the courts have interpreted the statutory language of § 5542(a) as creating a mandate to pay overtime compensation for work that is induced. OPM's duty is, therefore, to administer that mandate, not restrict it. *Sharma v. Peters*, 756 F.Supp. 3d 1271, 1284 (M.D. Ala. 2024) (bureau of prisons cannot substantively restrict prisoners' statutory eligibility for time credits by issuing regulations that add requirements not present in statute). OPM's writing regulation therefore exceeds the boundaries of the delegation in § 5548 because it does not further administration of the overtime statute in a manner that is consistent with its scope. *See Texas Med. Ass'n*, 120 F.4th at 507-08 (general delegation of authority to "promulgate such regulations as may be necessary or

---

[10] *See* Black's Law Dictionary (12th ed.), *administration* ("1. The management or performance of the executive duties of a government, institution, or business; collectively, all the actions that are involved in managing the work of an organization. 2. In public law, the practical management and direction of the executive department and its agencies").

appropriate to carry out the provisions of this subchapter" did not license agency to alter the statute's unambiguous terms regarding deadlines).

Other courts post-*Loper* to consider statutory delegations have likewise emphasized that *Loper* requires courts to carefully consider the statutory wording of the delegation. *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024) (reasoning that "express language conferring discretion on the agency is critical" and that there was none authorizing agency to interpret "exceptional and extremely unusual hardship," which was a "purely legal" question); *see also Haitian Ctrs. Council, Inc. v. Sale*, 823 F. Supp. 1028, 1046 (E.D.N.Y. 1993) ("Agency actions that do not fall within the scope of a statutory delegation of authority are *ultra vires* and must be invalidated by reviewing courts").

Accordingly, there exists no statutory delegation of authority to OPM to adopt its writing requirement.

**2. Any Purported Delegation of Authority to OPM to Restrict the Scope of the Statutory Right to Overtime Pay Would Not Be Constitutional**

Any statutory delegation that would purport to allow OPM to restrict the scope of a statutory right would not satisfy the Supreme Court's first requirement in *Loper* that the delegation be constitutional. *Loper*, 603 at 394-95. Rather, such a delegation would improperly usurp legislative authority.

Article 1 of the U.S. constitution vests legislative authority to make laws in Congress. U.S. Const., Art. 1, § 1. Congress has exercised that power to enact 5

U.S.C. § 5542, including the "officially ordered or approved" language of § 5542(a). Article III grants the judiciary the power to interpret these words. The judiciary has done so, and held the phrase encompasses overtime work that is induced but not authorized in writing, as set forth above. A regulation requiring overtime work to be authorized in writing would abrogate this statutory right. Even if Congress enacted a statute purporting to grant OPM the authority to define "officially ordered and approved" (which it did not) in such a manner, Congress cannot delegate to an executive branch agency the power to restrict a statutory right. Doing so would violate the non-delegation doctrine by improperly usurping Congress's role to make the law. *See ALA Schecter Poultry Corp. v. United States*, 295 U.S. 495, 529-30 (1935) ("Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested"); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935) (same); *see also Gundy v. United States*, 588 U.S. 128, 135(2019) ("Congress, this Court explained early on, may not transfer to another branch "powers which are strictly and exclusively legislative."); *see also Pickens*, 133 F.4th at 588 (court "must ensure that the statute contains an 'intelligible principle' and is not an impermissible delegation of legislative power to an executive brand agency" (citing *Loper*, 603 U.S. at 395); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001); *see also* 5 U.S.C. § 706(2)(B) (court must set aside agency actions that are "contrary to constitutional

... power”).

Section 5548’s delegation of authority regarding regulations necessary to administration does not contain an intelligible principle that can be construed as permitting OPM to abrogate a statutory right or contradict the statute’s plain terms. If the scope of the statutory right to overtime pay is to be modified, let alone reduced, it is for Congress to make that determination, not OPM.

**3. The Writing Regulation is Not the Product of Reasoned Decision Making, and is Arbitrary, Capricious, and Contrary to Law in that it Abrogates a Statutory Right**

Even if the government could identify a constitutional, broader statutory delegation of authority, the writing-requirement regulation at issue here fails *Loper*’s requirement that a regulation be a reasonable exercise of discretion because it improperly restricts a statutory right.

In *Loper*, the Supreme Court instructed that, even where there is a proper delegation, a court must “ensur[e] the agency has engaged in ‘reasoned decisionmaking’”. *Loper*, 603 U.S. at 394-95. Section 706 of the APA further requires a reviewing court to invalidate a regulation that is inconsistent with a statutory right. The APA specifically provides that a court “shall . . . hold unlawful and set aside any agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .or short of statutory right.” 5 U.S.C. § 706(2)(A), (C).

*Anderson* and the line of cases that followed it are clear that the statutory right to overtime pay includes a right to compensation for overtime work that is induced.[11] Any regulation purporting to proscribe inducement theory by requiring written authorization improperly abrogates, shortens, and restricts that right. Indeed, *Anderson* characterized such regulations as *de facto* subterfuge**:**

> The ***mandate*** of the statute is that "employees ***shall***, in addition to their basic compensation, be compensated for all hours of employment, officially ordered or approved, in excess of forty in any administrative workweek." The Commissioner of Customs, as the authorized deputy of the Secretary of the Treasury, had authority under the statute to order or approve the overtime hours of employment. While he did not order the work to be performed, he certainly knew and approved of its being done.
>
> ***The writing was required by the regulations, not by the statute***.
>
> In withholding written orders for or approval of the overtime, the Commissioner and his subordinates intended to withhold compensation for the services performed. . . . The finding herein is that [they] rationalized the concept of voluntary overtime into the course of conduct by which the patrol inspectors were ***induced*** to perform the overtime work. Under the circumstances, their actions resulted in ***subterfuge***, albeit unconscious. The withholding of written orders or approval reflected observance of the letter of the regulation but ***denial of the substance of the statute***.
>
> …
>
> Under the circumstances, the mandate to pay additional compensation for overtime hours, when the work was, as here, officially ordered or

[11] *Anderson*, 136 Ct. Cl. at 370; *Crowley*, 53 Fed. Cl. at 789; *Buckley*, 51 Fed. Cl. at 217-18; *Hannon*, 29 Fed. Cl. at 149; *Manning*, 10 Cl. Ct. 651 at 663; *De Costa*, 22 Cl Ct. at 176; *Bowman*, 7 Cl. Ct. at 308 n.6; *Bennett*, 4 Cl. Ct. at 337; *McQuown*, 199 Ct. Cl. at 858, ¶ 13; *Fix*, 368 F.2d at 613; *Rapp*, 340 F.2d at 644-45; *Gaines*, 158 Ct.Cl. at 497.

approved, ***is overriding***.

*Anderson*, 136 Ct. Cl. at 371 (emphasis added). *Anderson* and its progeny treat the writing requirement regulation as unreasonable and contrary to the terms of the statute.

The government admitted at initial oral argument in this case that the regulation, in fact, seeks to take back some of what Congress gave:

> COURT (Moore): So the plain language of the statute afforded this person and all similarly situated employees a substantive entitlement to pay if they're forced to work overtime. But you're saying the agency is allowed to take back some of what Congress gave?
>
> GOVERNMENT (Ms. Geddes): ***Yes***, that's exactly what the Supreme Court held in *Hansen*. . .

Lesko Oral Argument at 25:46-26:07 (emphasis added).

In addition to being contrary to the statutory right to overtime pay, OPM's writing regulation here is unreasonable in that it interferes with nurses' duties, including both their professional medical duties and their legal duties. As alleged the complaint, the overtime work at issue here was necessary to avoid injury and death to patients, avoid malpractice and professional negligence, and due to the policies of the workplace regarding patient care. Indeed, in other federal regulations, the government mandates that nursing care be provided 24-hours a day as needed based on patient care. *See* 42 C.F.R. § 482.23(a)-(b). Section 482.23(a)-(b) provides, among other things, that hospitals must provide "24-hour nursing

services," and be organized to "provide nursing care to all patients as needed" and "ensure, when needed, the immediate availability of a registered nurse for the care of any patient," as well as providing that nurses "must adhere to the policies and procedures of the hospital". 42 C.F.R. § 482.23(a)-(b). OPM's writing regulation impairs nurses' ability to comply with these requirements and punishes them for doing so by withholding pay for work that is required to be performed and actually performed.

Other courts evaluating regulations have invalidated those that are inconsistent with the scope, rights, or duties of the underlying statute. *See*, *e.g.*, *Texas Med. Ass'n*, 120 F.4th at 507-08 (general delegation of authority to "promulgate such regulations as may be necessary or appropriate to carry out the provisions of this subchapter" did not license agency to alter the statute's unambiguous terms regarding deadlines); *see Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 321 (2014) ("an agency interpretation that is 'inconsisten[t] with the design and structure of the statute as a whole . . . does not merit deference."); *Decker v. Northwest Environmental Defense Ctr.*; 568 U.S. 597, 1334 (2013) ("It is a basic tenet that 'regulations, in order to be valid, must be consistent with the statute under which they are promulgated.") (citing *United States v. J. Larionoff*, 431 U.S. 864, 873 (1977) (invalidating regulation "contrary to the manifest purposes of Congress")); *see also Producers Livestock Marketing Ass'n v. United*

*States*, 241 F.2d 192 (10th Cir. 1957) (invalidating regulation as unlawful restriction of statutory rights and duties), *aff'd by Denver Union Stock Yard Co. v. Producers Livestock Marketing*, 356 U.S. 282 (1958).

Relying on *Hansen* and *Doe*, the government attempted at oral argument to take the position that the regulation does contradict the statute but rather only sets what the government varyingly referred to as "regulatory," "procedural," or "substantive" requirements. Lesko Oral Argument at 24:32-27:14; *see also Doe*, 372 F.3d at 1355-56 (citing *Schweiker*, 450 U.S. at 785). Citing only *Doe* and *Hansen*, the *Mercier* court also stated in *dicta* that "as *Doe* explained when discussing *Hansen*, a procedural regulation is not invalid simply because it narrows the breadth of a statutory right." *Mercier*, 786 F.3d at 981-82.

Section 550.111(c)'s writing requirement, however, is not merely a procedural or regulatory requirement, but rather improperly restricts the substantive scope of and rights under the statute. In *Hansen*, at issue was a regulation requiring applicants for social security benefits to file their applications in writing — a manner of application within the applicant's own control. *Hansen*, 450 U.S. at 706; 42 U.S.C. § 402(g)(1)(D); 20 C.F.R. § 404.602. The regulation did not affect the applicant's eligibility for benefits, only the manner of their application. But here, neither Ms. Lesko nor other nurses have control over whether their supervisors fail to authorize their overtime work in writing. It would

be one thing for OPM to issue a regulation instructing supervisors to ensure that all overtime work is authorized in writing, and quite another for OPM to issue a regulation that permits the withholding of pay for overtime work that is required to be performed and actually performed simply because written authorization was withheld. The writing regulation here puts workers in a position where they may be forced to work overtime, yet, for no reason in their own control, are never paid for it. This abrogates the statutory right impermissibly in a manner not at issue in *Hansen.* Indeed, as *Mercier* recognized, the writing regulation in *Hansen*, which concerned a different statutory scheme, was irrelevant to the *Anderson* holding regarding overtime. *Mercier*, 986 F.3d at 979. The statute at issue in *Hansen* also did not have decades of case law interpreting its scope, which the regulation sought to restrict. The characterization of the writing requirement under § 550.111(c) as a mere procedural or regulatory requirement that does not contradict the statute and abrogate the statutory right to overtime pay is therefore incorrect.[12]

The government's proffered explanation for why the regulation is reasonable and not contrary to statute is also misplaced. Referencing *Doe,* at the initial oral argument the government asserted that the regulation was necessary to avoid

---

[12] Moreover, in *Hansen* the Supreme Court noted that Congress had delegated to the Social Security Administration "the task of providing by regulation the requisite manner of application". *Hansen*, 450 U.S. at 790. Congress has made no such specific delegation here, as set forth above.

budget liability to workers who choose to work on their own schedule. Oral Argument at 29:33-30:40. As the Court acknowledged, however, this raises a factual issue of whether the employees were, in fact, induced to work; it is irrelevant to the legal issue of whether inducement is a viable theory based on the plain language of the statute:

> COURT (Moore): But only if that delegated authority is clear that the agency in this case is entitled to, it seems according to you, contradict the express language of the statute. ***If that statute is not ambiguous, I don't see what authority you have for the proposition that you're allowed to limit an unambiguous statute.***
>
> GOVERNMENT: Because that's why this court found after *Hansen* that agencies could do just that. They can set ***procedural requirements for carrying out the statutory mandate so that these are administrable***. And the *Doe* Court also got into the reason why it was reasonable for OPM to do it in this case, which is that the alternative would be that the government would have no choice but to pay employees, exempt employees who are getting high levels of pay for work that they do sometimes on their own schedule, that ***they could just simply choose to come in early or stay late and then demand payment from the government, and the government won't be able to protect itself from liability***.
>
> COURT (Moore): ***That would be a question of inducement***. That would go to whether they were in fact induced. If they simply chose to work late or stay over, they wouldn't be induced. We have a construction that includes inducement.

Lesko Oral Argument at 28:58-30:16 (emphasis added). Moreover, the government's budget and liability concerns are not sufficient reason to issue regulations that contradict a statute. *See FDA v. Brown & Williamson Tobacco Corp*, 529 U.S. 120, 125-26 (2000) ("Regardless of how serious the problem an

administrative agency seeks to address, however, it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" (citing *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988)).

For these reasons, the writing requirement regulation of § 550.111(c) is not the product of reasoned decision making, is arbitrary, capricious, contrary to law, and short of statutory right, and is likewise contrary to *Anderson* and the cases that followed it. It therefore fails *Loper*'s standard and should be disregarded as this Court interprets § 5542(a)'s "officially ordered or approved" language.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Ms. Lesko respectfully requests that this Court reverse the Court of Federal Claims' opinion and order dated March 21, 2023, granting the United States' motion to dismiss, and vacate the judgment entered March 23, 2023. Appx001-011.

May 16, 2025

Respectfully Submitted,

/s/ Dimitrios V. Korovilas

Dimitrios V. Korovilas, Esq.
*Attorneys for Plaintiff-Appellant*
WUCETICH & KOROVILAS LLP
222 N. Pacific Coast Hwy., Ste. 2000
El Segundo, CA 90245
T: (310) 335-2001
F. (310) 564-5201
E. dimitri@wukolaw.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMEWNTS, AND TYPE STYLE REQUIREMENTS

I hereby certify pursuant to Fed. R. App. P. 32(g)(1) and Fed Cir. R. 32(b)(3) that the foregoing brief has been prepared using proportionally-spaced typeface and includes 10,817 words according to the Microsoft Word count function, excluding those materials not required to be included under Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

Dated: May 16, 2025

/s/ Dimitrios V. Korovilas

Dimitrios V. Korovilas
*Attorneys for Plaintiff-Appellant*
WUCETICH & KOROVILAS LLP
222 N. Pacific Coast Hwy., Ste. 2000
El Segundo, CA 90245
T: (310) 335-2001
F. (310) 564-5201
E. dimitri@wukolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, I electronically filed the foregoing document described as follows with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel for all parties who have registered for receipt of documents filed in this matter.

1. **CORRECTED *EN BANC* OPENING BRIEF OF APPELLANT (with Addendum)**

| ***Counsel for Defendant*** | ***Co-Counsel for Plaintiff*** |
|---|---|
| Matthew J. Carhart, Esq.<br>Reginald T. Blades, Jr., Esq.<br>Patricia M. McCarthy, Esq.<br>Brett Shumate, Esq.<br>Commercial Litigation Branch<br>Civil Division<br>United States Department of Justice<br>PO Box 480<br>Ben Franklin Station<br>Washington, DC 20044<br>T: (202) 305-4827<br>F: (202) 305-2062<br>E: matthew.carhart@usdoj.gov<br>E: reginald.blades@usdoj.gov<br>E: patricia.mccarthy@usdoj.gov<br>E: brett.a.shumate@usdoj.gov | Michael S. Morrison, Esq.<br>Alexander Morrison & Fehr LLP<br>1900 Avenue of the Stars, Ste. 900<br>Los Angeles, CA 90067<br>T: (310) 394-0888<br>F: (310) 394-0811<br>E: mmorrison@amfllp.com |

Dated: May 19, 2025

/s/ Dimitrios V. Korovilas

Dimitrios V. Korovilas, Esq.
*Attorneys for Plaintiff-Appellant*
WUCETICH & KOROVILAS LLP
222 N. Pacific Coast Hwy., Ste. 2000
El Segundo, CA 90245
T: (310) 335-2001
F. (310) 564-5201
E. dimitri@wukolaw.com

# ADDENDUM

# TABLE OF CONTENTS

Order and Opinion Dated 3/21/23 Granting Motion to Dismiss……Appx001

Judgment Dated 3/23/23…………………………………………… Appx011

# In the United States Court of Federal Claims

| | |
|---|---|
| JILLIAN LESKO,<br>*Plaintiff*,<br>v.<br>THE UNITED STATES,<br>*Defendant*. | No. 22-715C<br>(Filed: March 21, 2023)<br><br>Employment; Title 5; Title 38; Office of Personnel Management; Inducement; Overtime |

*Michael Morrison*, Alexander, Morrison, and Fehr LLP, Los Angeles, CA, for Plaintiff.

*Kelly Geddes*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER**, *Judge*.

Plaintiff, Ms. Jillian Lesko, served her country as a nurse practitioner for the Indian Health Service ("IHS") during eight months of the COVID-19 pandemic. Am. Compl. ¶¶ 1, 4, ECF No. 9. She brings this case on behalf of herself and all those similarly situated. *Id.* at ¶ 1.

Ms. Lesko alleges that she was denied various pay enhancements in violation of (1) 38 U.S.C. § 7453 (miscellaneous compensation benefits); (2) 5 U.S.C. §§ 5542–43 and 5 C.F.R. §§ 550.111–14 (overtime pay); (3) 5 C.F.R. §§ 550.121–22 (nighttime pay); (4) 5 C.F.R. §§ 550.171–72 (Sunday pay); and (5) 5 C.F.R. §§ 550.131–32 (holiday pay). For all of her claims, she seeks backpay under 5 U.S.C. § 5596 if she is "found by appropriate authority . . . to have been affected by an unjustified or unwarranted personnel action." 5 U.S.C. § 5596(b)(1).

Before the Court is Defendant's Second Motion to Dismiss ("Mot."), ECF No. 15. For the reasons stated below, Defendant's Motion is **GRANTED**, and Ms. Lesko's Amended Complaint is **DISMISSED** for failure to state a claim upon which relief may be granted. Ms. Lesko was not a Title 38 employee and, therefore, was ineligible to receive additional pay pursuant to 38 U.S.C. § 7453. Her argument under 5 U.S.C. §§ 5542–43 also fails because the statute does not provide for recovery under an inducement theory. Lastly, Ms. Lesko cannot recover for nighttime, Sunday, and holiday pay because she does not allege that this work was scheduled in advance as required by Office of Personnel Management ("OPM") regulations.

## I. Background

Between November 9, 2020, and July 21, 2021, Ms. Lesko worked as a Supervisory Advanced Practice Registered Nurse for the IHS—a division of the Department of Health and Human Services ("HHS"). Am. Compl. ¶¶ 1, 4, ECF No. 9; Mot. at 2. Ms. Lesko performed both clinical and administrative duties to assist Native American youth experiencing issues with alcohol and substance abuse. Def.'s App. to Mot. to Dismiss ("Def.'s App.") at Appx27–37. She worked at two IHS hospitals located in Phoenix, Arizona, and Wadsworth, Nevada. Am. Compl. ¶ 4. IHS hired and paid Ms. Lesko at a GS-13, step 10 level. *Id.* at Appx8. When she started this position with IHS, Ms. Lesko had "over 18 years of experience in healthcare [and] over 10 years of experience as a nurse." *Id.* at Appx10. She was board certified by both the American Nurses Credentialing Center and the American Academy of Nurse Practitioners as a Family Nurse Practitioner from January 2016 through January 2021. *Id.* at Appx15–16. She holds a Master of Science degree in Nursing from the University of Southern Alabama. *Id.* at Appx13–16.

As public-sector nurses during the height of the COVID-19 pandemic, Ms. Lesko and her peers bore the brunt of the crisis. Am. Compl. ¶ 43. To meet the exigencies of that unique moment, Ms. Lesko frequently worked long hours. *See id.* at ¶¶ 26–27. Twenty-four hours per day, seven days per week, the IHS electronic health record system alerted her with patient updates. *Id.* at ¶¶ 44, 45, 47. Often, those updates "require[d] immediate responses," *id.* at ¶ 44, or at least "timely" responses pursuant to IHS policies and procedures, *id.* at ¶ 48. Ms. Lesko and other nurses were also required to transmit patient related information on paper and via fax and email. *Id.* at ¶ 46. She claims that she often needed to respond to patient notes and records within 48 to 72 hours. *Id.* at ¶ 50. Ignoring these alerts could have risked the health and well-being of patients and compromised her compliance with the standard of care required of nurses. *Id.* at ¶¶ 48, 50. Ms. Lesko alleges that the work she was unable to complete during the workday occupied much of her nights, Sundays, and holidays. *Id.* at ¶¶ 57–60.

Ms. Lesko states that her supervisors knew about her overtime and off-the-clock work. *Id.* at ¶¶ 50–51, 54. She describes a work environment wherein she and her coworkers felt compelled to complete unfinished work outside scheduled work hours. *Id.* This pressure was only exacerbated by the pandemic. *Id.* at ¶ 53. After eight months as an IHS nurse, Ms. Lesko resigned on July 21, 2021. Def.'s App. at Appx54.

## II. Statutory Background

The parties invoke two different employment statutes—Titles 5 and 38 of the United States Code. *See* 5 U.S.C. § 5301; 38 U.S.C. § 7401. Each govern the hiring, firing, and compensation of federal employees. Title 5 covers compensation and benefits for most General Schedule federal employees. *See* 5 U.S.C. § 5301. In comparison, Chapter 74 of Title 38 ("Title 38") governs employment within the Department of Veterans Affairs ("VA"). *See* 38 U.S.C. § 7401. Title 38 provides greater flexibility over personnel decisions to VA leadership and, simultaneously, more competitive pay than Title 5. *See generally* 38 U.S.C. § 7451 (stating the purpose of this provision is to ensure hiring remains "competitive, on the basis of pay and other employee benefits, with non-Department health-care facilities in the same labor-market").

Both Title 5 and Title 38 increase compensation for overtime, nightwork, holidays, and Sundays. *See* 5 U.S.C. § 5542; 5 C.F.R. §§ 550.111–114, 550.121–125, 550.131–132, 550.171–172. However, Titles 5 and 38 calculate—and label—this increased compensation differently. Under Title 5, the annual rate of basic pay is divided by 2,087 hours of annual work to calculate a "premium pay" rate. *See* 5 U.S.C. § 5504(b)(1). Under Title 38, the annual rate of basic pay is divided by 2,080 hours of annual work to calculate an "additional pay" rate. 38 U.S.C. §§ 7453(a)–(e). This numerical difference informs much of Plaintiff's Amended Complaint and the analysis in Defendant's Motion to Dismiss.

## III. Procedural Background

On June 27, 2022, Plaintiff filed a Complaint for violation of 38 U.S.C. § 7453. Compl. at ¶ 1, ECF No. 1. On October 24, 2022, Defendant moved to dismiss for failure to state a claim. Def.'s First Mot. Dismiss, ECF No. 7. On November 14, 2022, Plaintiff amended her Complaint as a matter of course pursuant to Rule of the Court of Federal Claims ("RCFC") 15(a)(1)(B), thereby mooting Defendant's First Motion to Dismiss. *See* Am. Compl.; Order Dismissing Def.'s First Mot. to Dismiss as Moot, ECF No. 10. Defendant's Second Motion to Dismiss—alongside Plaintiff's Response, ECF No. 18, and Defendant's Reply, ECF No. 19—is currently before this Court.

## IV. Jurisdiction

Plaintiff asserts claims for overtime and off-the-clock pay pursuant to 38 U.S.C. § 7453 and the Tucker Act, 28 U.S.C. § 1491(a). Am. Compl. ¶ 1. If this Court finds Plaintiff ineligible under 38 U.S.C. § 7453, she seeks alternative relief under 5 U.S.C. §§ 5542 and 5543. *Id.* This Court has jurisdiction over claims arising under 38 U.S.C. § 7453 and 5 U.S.C. § 5542. *See Mercier v. United States*, 114 Fed. Cl. 795, 799 (2014) (finding jurisdiction over 38 U.S.C. § 7453); *Oztimurlenk v. United States*, 162 Fed. Cl. 658, 666 (2022) (same); *Austin v. United States*, 124 Fed. Cl. 410 (2015) (same); *Doe v. United States*, 372 F.3d 1347, 1362 (Fed. Cir. 2004) (proceeding with claims under 5 U.S.C. § 5542); *Bishop v. United States*, 77 Fed. Cl. 470, 474 (2007) (same).

However, this Court does not have jurisdiction over 5 U.S.C. § 5543. The Federal Circuit held in *Horvath v. United States* that 5 U.S.C. § 5543 is "discretionary, . . . not money-mandating and [does] not confer jurisdiction" on the Court of Federal Claims. 896 F.3d 1317, 1320 (2018).

## V. Standard of Review

To survive a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts grant a RCFC 12(b)(6) motion to dismiss when "the facts asserted by the claimant do not entitle [plaintiff] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When reviewing a motion to dismiss, the Court of Federal Claims accepts "all well-pleaded factual allegations as true and draws all reasonable inferences" in favor of the plaintiff. *Id.*

## VI. Discussion

### A. Count I Is Dismissed.

This Count boils down to one central dispute: Was Ms. Lesko a Title 38 employee? In short, she was not. Only the VA can hire nurses under Title 38. 38 U.S.C. § 7401 (granting sole authority to hire pursuant to Title 38 to the Secretary of Veterans Affairs). Ms. Lesko, by contrast, was a nurse for IHS and, therefore, was not a Title 38 employee.

Title 5—the statute which enables IHS to hire nurses—permits discretionary application of certain provisions from Title 38. 5 U.S.C. § 5371. Therein lies the confusion. Plaintiff makes a one-for-all and all-for-one argument. She claims that IHS's decision to apply one Title 38 provision (base pay, 38 U.S.C. § 7455) necessitates the application of Title 38 in its entirety (including premium pay, 38 U.S.C. § 7453). Am. Compl. ¶ 1.

Title 5 says otherwise. The Office of Personnel Management may apply "1 or more provisions of . . . [T]itle 38." 5 U.S.C. § 5371(b). The answer to the operative question—whether Ms. Lesko was a Title 38 employee—is found in the plain language of the statute. OPM has the authority to cherry-pick Title 38 provisions and apply them piecemeal to Title 5 employees. However, the choice to apply one Title 38 provision did not, and could not, transform IHS nurses into Title 38 employees. IHS, as OPM's subdelegate, enjoys the same discretion. Plaintiff proposes a structure by which delegation somehow dilutes this discretion. Resp. at 3. In other words, she acknowledges that OPM can choose to apply provisions of Title 38 but argues IHS does not have that same discretion. Neither case law, statute, nor regulation support this argument.

OPM authorizes the HHS Secretary to choose "certain [T]itle 38 provisions," including "premium pay." Am. Compl. at Ex. A (Delegation Agreement between U.S. Office of Personnel Management and Department of Health and Human Services (June 28, 2022)). The delegation agreement does not permit (nor would the law allow) the HHS Secretary to hire nurses under Title 38. *Id.* ("OPM is delegating to HHS discretionary use of certain [T]itle 38 provisions that are primarily available to the Department of Veterans Affairs. If HHS uses one of the authorities in this delegation agreement, the comparable authority in [T]itle 5 is waived. The provisions listed are . . . provided in 5 U.S.C. [§] 5371.").

The Secretary delegates the "administrative and human resources authorit[y]" to the Assistant Secretary for Administration. Def.'s App. at Appx3. The delegation expressly authorizes the Assistant Secretary to provide direction and issue guidance to Operating Divisions—including IHS. *Id.* Pursuant to this authorization, the Assistant Secretary delegates "[a]ll human resources line management authority" to IHS. *Id.* at Appx1. Nothing in the memoranda tracing discretion from OPM to, ultimately, IHS cabined or changed the statutory permission to choose "one or more" provisions from Title 38 to apply to Title 5 employees.

Simply put, Ms. Lesko was a Title 5 employee benefiting from certain Title 38 provisions. IHS chose to apply one Title 38 provision and forgo the rest. *See* Indian Health Service, Pay Systems and Tables, Pay Systems Authorized Under Title 38 of the United States Code, Title 38 Special Salary Rates (Oct. 17, 2022) ("IHS has authorized higher rates of basic

pay than regular GS locality rates for certain health care occupations based on documented recruitment and retention issues and in compliance with Title 38 statutory criteria."). There is no statutory provision or other authority preventing IHS from doing so. For these reasons, Count I of the Amended Complaint is dismissed.

**B. Count II Is Dismissed.**

For reasons similar to Count I, Count II must also be dismissed. Count II alleges that Plaintiff is entitled to premium pay for overtime induced by her supervisors. Am. Compl. ¶¶ 81–91; Resp. at 10–14. However, her argument rests on the supposition that she was a Title 38 employee. Am. Compl. ¶¶ 12–25 ("The statutory requirements outlined in 38 U.S.C. § 7451 provide for increases in the rates of basic pay for [nurses] when compared to Title 5 employees." *Id.* at ¶ 14.). Having held that Ms. Lesko was not a Title 38 employee, the Court dismisses Count II for failure to state a claim.

In the alternative, Ms. Lesko argues she is entitled to relief under Title 5. However, Title 5 requires written authorization for overtime. *Doe v. United States*, 372 F.3d 1347, 1362 (Fed. Cir. 2004). Plaintiff contends she can recover despite this requirement and cites *Mercier v. United States*, 786 F.3d 971, 982 (Fed. Cir. 2015), to support her claim. Resp. at 10. But *Mercier* is inapposite. In *Mercier*, the plaintiffs successfully recovered for after-hours work under an inducement theory of overtime. 786 F.3d at 982. Under inducement theory, employees may still recover for overtime work expected, required, or induced by other means, even when an employer has not approved the overtime in writing. *See, e.g.*, *Anderson v. United States*, 136 Ct. Cl. 365, 370 (1956). Unlike Ms. Lesko, however, the *Mercier* plaintiffs were VA employees hired under Title 38. *Id.* at 972. As such, *Mercier* only applies in the context of Title 38. *See Mercier*, 786 F.3d at 982. Because Ms. Lesko was a Title 5 employee, resolution of this issue turns on whether Title 5—not Title 38—permits recovery under inducement theory. It does not.

To begin, Plaintiff reads *Mercier* too broadly. Resp. at 10–14. Because the language "officially ordered or approved" is identical in Titles 5 and 38, *Mercier* conformed to the precedent in *Anderson* that induced overtime is "officially ordered or approved." *See Mercier*, 786 F.3d at 982 ("We therefore hold that *Anderson*'s interpretation of 5 U.S.C. § 5542, namely that overtime is 'officially ordered or approved' where it is induced by one with the authority to order or approve overtime but not expressly directed, remains good law.").

However, *Mercier* and *Anderson* have limited applicability. They apply only when the agency has not yet issued a regulation interpreting "officially ordered or approved." *Id.* ("Thus, our current clarification of *Doe* does not in any way undermine its holding that the regulation was entitled to *Chevron* deference."). When an agency issues regulations implementing Title 5, courts afford *Chevron* deference to the agency's interpretation. *E.g.*, *Doe*, 372 F.3d at 1362.

In *Anderson*, the Federal Circuit invalidated the relevant regulation and interpreted the statute as though no regulation were in effect. *Mercier*, 786 F.3d at 981 (interpreting *Anderson*) ("*Anderson* held the regulation invalid and accordingly considered the full scope of the statutory right."). It applied general principles of statutory interpretation and read Title 5 to "encompass[] forms of order or approval that might by their nature never be put in writing," i.e., inducement theory. *Mercier*, 786 F.3d at 981 (describing *Anderson*); *see Anderson*, 136 Ct. Cl. at 371 ("The

withholding of written orders or approval reflected observance of the letter of the regulation but denial of the substance of the statute."). *Anderson*'s interpretation of Title 5 controls only in the narrow circumstance where an agency's implementing regulation has not yet interpreted Title 5.

Similarly, in *Mercier*, "no procedural regulations [had] interpret[ed] the Title 38 overtime provision," so the Federal Circuit held "that *Anderson*'s interpretation of [Title 5] that overtime is 'officially ordered or approved' where it is induced . . . remains good law." *Mercier*, 786 F.3d at 979, then at 982 (citing *Anderson*, 136 Ct. Cl. at 370). *Anderson* and its progeny "remain good law" in the narrow scenario where an agency has not yet interpreted the statute. When an agency has, *Chevron*—not *Anderson*—governs.

In one such case, the Federal Circuit had occasion to review OPM's construction of Title 5's overtime provision. At *Chevron* Step Two, the court in *Doe* deferred to "OPM's view that [Title 5's] 'ordered or approved' language can reasonably be interpreted to require a more formal means of authorization," i.e., written approval. 372 F.3d at 1361–62 (holding that OPM permissibly constructed Title 5 to proscribe inducement theory). The same regulation in *Doe* is now in question and, as in *Doe*, the same result prevails.

The Court follows *Doe*'s lead and restates its holding that OPM regulation 5 C.F.R. § 550.111 is a permissible construction of Title 5's overtime provision. *Id.* at 1362 ("[T]he OPM regulation interprets an ambiguous statute that it was expressly authorized to administer. OPM's construction of the phrase 'ordered or approved,' as requiring written authorization, is reasonable and entitled to *Chevron* deference because it comports with, and indeed furthers, the language and purpose of [Title 5]."). *Doe* itself did not interpret Title 5, nor did it have cause to. *See Mercier*, 786 F.3d at 981 (explaining the limited holding in *Doe*). It stands for the limited proposition that *Anderson* does not apply—and *Chevron* does—when an agency has already interpreted Title 5 and regulated pursuant to that interpretation. *Id.* ("Where *Anderson* . . . considered the full scope of the statutory right, *Doe* enforced the writing regulation and had no cause to consider whether the phrase . . . encompassed forms of order or approval that might by their nature never be put 'in writing.' The question before us today—whether overtime may be 'ordered or approved' by inducement, albeit under a different statute—was simply never considered by the *Doe* court.").

In that regard, *Doe* controls when a court reviews OPM's interpretation of Title 5. *See, e.g.*, *Aletta v. United States*, 70 Fed. Cl. 600, 604 (2006) (applying *Doe*) ("OPM, and before it the Civil Service Commission, have had substantially the same regulation since 1945 regarding . . . 5 C.F.R. § 550.111(c). The Federal Circuit has found this regulation to be a valid and enforceable exercise of OPM's authority to implement [Title 5]."); *Bishop v. United States*, 77 Fed. Cl. 470, 474 (2007) (same) ("[P]laintiffs were not entitled to overtime compensation because, with the exception of certain post orders, they could not present evidence showing that the overtime was ordered or approved in writing.").

If Plaintiff were a Title 38 employee, then *Mercier* would control. *See, e.g.*, *Oztimurlenk v. United States*, 162 Fed. Cl. 658, 666–67 (2022) (invoking *Mercier* in a Title 38 action); *Coyner v. United States*, 161 Fed. Cl. 677, 684 (2022) (same). But she is not. So, *Mercier* and its interpretation of "officially ordered or approved" are of no moment. Instead, the instant case turns on the same regulation in *Doe*—5 C.F.R. § 550.111. The Court is thus obligated to reject

Plaintiff's inducement theory. Unless Plaintiff can allege that her overtime work was approved in writing, no remedy is available.

Plaintiff also includes an argument about compensatory time. When employees work hours in excess of their "scheduled tour of duty," they may be granted "compensatory time off" instead of payment for that work. 5 U.S.C. § 5543(a)(2). Specifically, Ms. Lesko claims that she was "routinely required to take compensatory time in lieu of overtime pay without [her] consent and without [her] having voluntarily requested such comp[ensatory] time credit in writing." Am. Compl. ¶ 63. That requirement, however, is found only in Title 38 and nowhere in Title 5. 38 U.S.C. § 7453(e)(3).

Instead, Title 5 gives the agency discretion whether to grant compensatory time without the procedural hurdles included in Title 38. 5 U.S.C. § 5543(a)(2); *see also Doe*, 372 F.3d at 1351 (Fed. Cir. 2004) ("[Title 5] allows the head of an agency to 'grant [an] employee compensatory time off from his scheduled tour of duty instead of payment under section 5542.'"). This discretion precludes this Court's review entirely. The Federal Circuit held in *Horvath* that 5 U.S.C. § 5543 is "discretionary, . . . not money mandating, and could not confer jurisdiction" on the Court of Federal Claims. 896 F.3d at 1320.

For the aforementioned reasons, Count II of the Amended Complaint is dismissed.

### C. Counts III–V Are Dismissed.

Having found that Plaintiff was a Title 5 employee without the ability to recover under inducement theory, the Court dismisses Counts III through V for failure to state a claim.

Plaintiff's argument is split into two contentions. First, Ms. Lesko asserts she was not compensated correctly for nighttime, Sunday, and holiday work. Am. Compl. ¶¶ 58–61. However, Plaintiff seemingly concedes that IHS calculated her pay correctly under Title 5. *Id.* at ¶ 23 ("Plaintiff's . . . hourly rate of basic pay would be proper if the workers were being paid according to Title 5."), ¶ 25 ("IHS calculated a lower hourly rate of basic pay for all [nurses] and then applied that lower hourly rate when calculating additional pay."). Her sole complaint is that IHS miscalculated her pay under Title 38, which she maintains as part of her bid for Title 38 status. *Id.* For the same reasons Count I must be dismissed, this claim also fails.

Ms. Lesko next contends that she did not receive premium pay for work performed at night, on Sundays, and on holidays. *See* Am. Compl. ¶¶ 95–98, 101–106, 109–13. To qualify for premium pay, OPM regulations require that all nighttime, Sunday, and holiday work be scheduled in advance. *See* 5 C.F.R. § 550.121 ("[N]ightwork is *regularly scheduled* work performed by an employee." (emphasis added)); 5 C.F.R. § 550.131 ("Sunday work means nonovertime work performed by an employee during a *regularly scheduled* daily tour." (emphasis added)); 5 C.F.R. § 550.131 ("Holiday work means nonovertime work performed by an employee during a *regularly scheduled* daily tour." (emphasis added)). Plaintiff does not claim this work was scheduled in advance. Rather, she suggests that her work was induced by supervisors: "Defendant wrongfully, willfully, regularly and routinely informed Plaintiff[] . . . that work alleged herein was required, necessary and critical to satisfactory patient care." *Id.*

at ¶¶ 97, 105, 113. Plaintiff again relies on an inducement theory of recovery. Resp. at 17 ("[S]uch work was . . . induced."). But applicable regulations do not support this argument.

Definitionally, Ms. Lesko did not complete nightwork, Sunday work, or holiday work. The regulation defines all three categories as "regularly scheduled work." 5 C.F.R. § 550.121. Ms. Lesko explicitly acknowledges that her work was unscheduled. *See* Am. Compl. ¶ 43 ("[N]urses were required to work long hours, well over their regularly scheduled tours of duties."), ¶ 45 (alleging that nurses utilized electronic health record systems to manage patient care "after their tours of duty"), ¶ 49 ("Managing, responding to and/or otherwise working after tours of duty constitutes compensable work."), ¶ 51 ("[S]upervisors and management know that employees are working after tours of duty are completed."), ¶ 53 ("Plaintiffs and class members have not been able to . . . complete all necessary and required patient work during their regularly scheduled tours of duty" and "were often required to stay after tours of duty ended."), ¶ 54 ("[I]t is often impossible to complete all required work and paperwork during normally scheduled tours of duty.").

Though the result of this narrow requirement may have unfairly impacted healthcare workers who worked irregular hours, this Court cannot grant the relief requested either at law or in equity. In *Aviles v. United States*, the Federal Circuit's predecessor court—the Court of Claims—treated unscheduled work as though it had been scheduled. *See* 151 Ct. Cl. 1, 8 (1960). There, the Agricultural Research Service paid its meat inspectors for forty-hour, five-day weeks. *Id.* In actuality, the employees regularly worked days "lasting . . . until the processing plant completed its recurring overtime" well beyond forty-hours. *Id.* (emphasis omitted). The meat inspectors stayed at the plant on a daily basis beyond the scheduled eight-hour workday, as a group. *Id.* The employer refused to schedule this regular overtime for fear that "payment might have to be made for overtime hours scheduled but not actually worked." *Id.* So, the Court of Claims treated recurrent, daily, but unscheduled overtime as regularly scheduled. *Id.* at 9.

Unlike in *Aviles*, much of Ms. Lesko's off-the-clock work was impossible to schedule in advance. Plaintiff alleges, for instance, that "alerts and notifications . . . [could] be sent at any time during a 24 hour period, 7 days a week." Am. Compl. ¶¶ 44–51. This type of overtime was not present in *Aviles*. The Court of Claims later explained that the *Aviles* plaintiff "was called upon regularly to perform night work [which] . . . could have and indeed should have been formally scheduled." *Burich v. United States*, 177 Ct. Cl. 139, 147 (1966) (describing *Aviles*). IHS could not have "formally scheduled workweeks . . . which included the overtime . . . it knew would be required," *Aviles*, 151 Ct. Cl. at 8, when much of the additional work revolved around "patient emergencies" "at any time," Am. Compl. ¶ 47. Plaintiff does not allege that her off-the-clock work followed an "actual, controllable" pattern as in *Aviles* and *Burich*. Nothing in her Amended Complaint suggests her additional work could be formally scheduled. *See Medrano v. United States*, 161 Fed. Cl. 207, 209 (2022) (denying motion to dismiss because plaintiffs alleged that their off-the-clock work could be scheduled).

Eventually, OPM codified *Aviles*' equitable holding in 5 C.F.R. § 610.121(b)(3). *Id.* at 208–09 (stating that OPM "in effect codif[ied] *Aviles*"). "If . . . an agency should have scheduled a period of work as part of the employee's regularly scheduled administrative workweek and failed to do so . . . the employee shall be entitled to . . . premium pay for that period of work as regularly scheduled work." 5 C.F.R. § 610.121(b)(3). However, license to

retroactively schedule unscheduled work is restricted by the agency's "knowledge of the specific days and hours of the work requirement in advance." *Id.*

Here, the alleged facts belie "knowledge of the specific days and hours." *Id.* Plaintiff contends that supervisors "had knowledge that off-the-clock work was occurring on a recurrent and continuous basis." Resp. at 17. But knowledge of recurrent off-the-clock work is insufficient. The regulation requires advanced knowledge of "specific days and hours" that such work is occurring, 5 C.F.R. § 610.121(b)(3), as in *Aviles* where employees remained at work en masse for predictable hours, 151 Ct. Cl. at 8. There are no allegations of such knowledge in the Amended Complaint. Accordingly, Counts III through V are dismissed.

## VII. Conclusion

Ms. Lesko worked for eight months as a government nurse during a global pandemic. Despite irregular and excessive overtime and off-the-clock work, binding precedent precludes relief. Previously, the Federal Circuit explained that its deference to OPM and its interpretation of Title 5 are designed to protect the public treasury from unanticipated spending. *See Doe*, 372 F.3d at 1356. While fiscal responsibility is certainly an important consideration, it should not be the only consideration. OPM may benefit from weighing guardrails on spending against (1) the demands of healthcare work in the twenty-first century (particularly during a pandemic); (2) hiring and retaining competitive workers; and above all (3) fairness for healthcare workers regardless of the statute under which they are hired.

Plaintiff's Amended Complaint is **DISMISSED** without prejudice. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge

# In the United States Court of Federal Claims

| | |
|---|---|
| JILLIAN LESKO,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant*. | No. 22-715<br>(Filed: February 22, 2023) |

**ORDER**

On February 22, 2023, the Government filed a Motion to Place Filing Under Seal and to Correct Filing. ECF. No. 16. The Motion is **GRANTED**. Defendant is permitted to file the corrected version attached to its Motion, ECF No. 16-1. The Clerk of the Court is directed to **SEAL** the Government's First Motion to Dismiss, ECF No. 7.

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge

# In the United States Court of Federal Claims

**No. 22-715 C**
**Filed: March 23, 2023**

**JILLIAN LESKO**
**Plaintiff**

**v.** **JUDGMENT**

**THE UNITED STATES**
**Defendant**

Pursuant to the court's Opinion and Order, filed March 21, 2023, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff's amended complaint is dismissed, without prejudice, for failure to state a claim upon which relief may be granted.

Lisa L. Reyes
Clerk of Court

By: s/ Debra L. Samler

Deputy Clerk

NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.